OPINION OF THE COURT
Chief Judge Wachtler.
Sensitive to the reality that business is often conducted and professional contacts initiated and renewed in private clubs, the City of New York in 1984 adopted Local Law No. 63. The law is intended to prohibit discrimination in those clubs which, in essence, provide benefits to business entities and to persons other than their own members, thereby assuming a sufficient public character that they should forfeit the "distinctly private” exemption of the City’s Human Rights Law.[1] Today, we uphold Local Law No. 63 as a valid and constitutional exercise of the police power of the City of New York.
The New York City Human Rights Law (Administrative Code of City of New York tit 8) forbids invidious discrimination in "place[s] of public accommodation, resort or amuse *216 ment” (Administrative Code § 8-107 [2]). It excludes from its definition of "public accommodation” "any institution, club or place of accommodation which * * * is in its nature distinctly private” (Administrative Code § 8-102 [9]). As it originally read, the City Human Rights Law did not amplify what it meant by the term "distinctly private”. On October 9, 1984, the City Council enacted Local Law No. 63, which states that a club "shall not be considered in its nature distinctly private if it [1] has more than four hundred members, [2] provides regular meal service, and [3] regularly receives payment for dues, fees, use of space, facilities, services, meals or beverages directly or indirectly from or on behalf of nonmembers for the furtherance of trade or business” (Local Laws, 1984, No. 63 of City of New York, amending Administrative Code § 8-102 [9]).
The need for this legislation, according to the extensive findings of the City Council, was to realize the City’s "compelling interest in providing its citizens * * * regardless of race, creed, color, national origin or sex * * * a fair and equal opportunity to participate in the business and professional life of the city”. The City Council found that business activity pervades clubs which have more than 400 members and regularly provide meals during which business is conducted. The Council further recognized that employers often pay the dues and expenses of their employees because the activities at the clubs help to develop the employers’ own business. In these circumstances, the Council concluded, denial of access to club facilities constitutes a significant barrier to the professional advancement of women and minorities since business transactions are often conducted in such clubs, and personal contacts valuable for business purposes, employment and professional advancement are formed.
Immediately after the Mayor signed Local Law No. 63, plaintiff New York State Club Association, Inc., a consortium of some 125 private clubs — many of which, according to plaintiffs affidavit, "intentionally have been organized along national origin, religious, ethnic and gender lines” — commenced this action against various City defendants for a judgment declaring Local Law No. 63 unconstitutional.
Plaintiffs primary contention on this appeal is that Local Law No. 63 violates the "home rule” provision of the New York State Constitution (art IX, § 2 [c]) because it is inconsistent with the State Human Rights Law (Executive Law § 290 et seq.), as construed by this court, and, therefore, constitutes an invalid exercise of the City’s police power.
*217 I.
A.
The constitutional home rule provision confers broad police power upon local government relating to the welfare of its citizens[2] (see, People v De Jesus, 54 NY2d 465, 468). However, it places two firm restrictions on their use: (1) the local government (here, the City of New York) may not exercise its police power by adopting a local law inconsistent with constitutional or general law; and (2) the City may not exercise its police power when the Legislature has restricted such an exercise by preempting the area of regulation (Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105; People v Cook, 34 NY2d 100, 105-106). The legislative intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area.
Similarly, with respect to inconsistency, we have stated that there need not be an express conflict between State and local laws to render a local law invalid (Consolidated Edison Co. v Town of Red Hook, 60 NY2d, at p 108, supra). Rather, inconsistency "has been found where local laws prohibit what would have been permissible under State law or impose 'prerequisite "additional restrictions” ’ on rights under State law, so as to inhibit the operation of the State’s general laws” (id., quoting F. T. B. Realty Corp. v Goodman, 300 NY 140, 147-148 [citations omitted]).
The issues have been narrowed by the parties with the plaintiff having made two concessions. First, plaintiff does not question the City’s underlying authority to exercise the police power it possesses in the area of human rights (cf. Wholesale Laundry Bd. v City of New York, 17 AD2d 327, 328-329, affd 12 NY2d 998 [local law challenged on grounds of lack of home rule authority and as inconsistent]). Also important, plaintiff *218 acknowledges on this appeal that the State has not preempted the field of antidiscrimination legislation by enacting the human rights provisions of the Executive Law (§ 290 et seq.). Having made these concessions — especially the latter — plaintiff would have us attach no legal significance to them and seeks to focus instead on the purported inconsistency of Local Law No. 63. A finding of inconsistency alone would require invalidation of Local Law No. 63, but in this case the distinction between preemption and inconsistency plaintiff urges is not so neat. For "these two [alleged] infirmities are often interrelated” (Consolidated Edison Co. v Town of Red Hook, at p 105, supra; see also, Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 NY2d 679, 683).
We turn, then, to an examination of the State statutory scheme, there being no serious question that the City may indeed regulate in this area so long as the regulation is consistent.
B.
The State Human Rights Law begins with the declaration that "[i]t shall be deemed an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state, and in fulfillment of the provisions of the constitution of this state concerning civil rights” (Executive Law § 290 [2]). The State statute forbids certain invidious discrimination by "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof’ (Executive Law § 296 [2] [a]). It defines "place of public accommodation” "inclusively and illustratively, not specifically” (Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d 401, 409, rearg dismissed 60 NY2d 682, 702), setting forth an extensive list of examples of facilities that fall within the ambit of the statute (Executive Law § 292 [9]). Notably, in language identical to that employed in the City’s Human Rights Law, the State law excludes from the definition of "public accommodation” "any institution, club or place of accommodation which is in its nature distinctly private” (Executive Law § 292 [9]). Unlike the City *219 counterpart, the State Human Rights Law contains no legislative definition of the term "distinctly private”.
In the face of this omission and in the absence of any claimed or apparent legislative design to preempt the area of antidiscrimination legislation, the precise question presented is whether the police power to govern with respect to public welfare, health and peace — inherent in the State, yet also delegated to municipalities under the Constitution’s home rule provision — permits the City to define for itself when a club loses its "distinctly private” nature.
People v Judiz (38 NY2d 529) presented a comparable problem. A provision of the State’s Penal Law (§ 265.01 [2]) prohibited the possession of, among other things, any imitation pistol "with intent to use the same unlawfully against another” (id., at p 531). We upheld the defendant’s conviction of possession of a toy pistol painted to resemble a real Luger pistol under a City ordinance which, by contrast, prohibited the possession or use of any toy or imitation pistol or revolver which substantially resembled an actual pistol or revolver; specific intent to use the toy weapon was not an- element of the local law (id., at pp 530-531). We held, first, that the State had not preempted the field, and, second, that the local law was not impermissibly inconsistent, reasoning that the Penal Law failed to define the term "imitation pistol”: the State law "evince[d] an intent to cover, quite broadly, most of the possible categories of weapons for which it deem[ed] some sanction is necessary when these are used with illegal intent, [but] the city ordinance is aimed at the prevention of a more particular type of abuse” (id., at p 532; see also, Council for Owner Occupied Hous. v Koch, 119 Misc 2d 241, 247, affd 61 NY2d 942).
Similarly, in the present case, the City possesses broad home rule power and the State concededly has not preempted the area of antidiscrimination. That the field has not been preempted must mean that the Legislature would permit the City, consistent with both the letter and spirit of the State Human Rights Law, to regulate on its own in the face of the more particular situation it has found in its private clubs (see, People v Cook 34 NY2d 100, 109, supra; People v Judiz, 38 NY2d 529, 532, supra). Indeed, the State’s failure to define the term "distinctly private” suggests a legislative intent to allow local governments to enact pursuant to the municipal home rule power definitions that are not inconsistent with the meaning of this broad term.
*220 Plaintiff acknowledges that no impermissible inconsistency exists between the State statute itself and the definition provided by Local Law No. 63; rather, it urges that the City’s parochial view of what a "distinctly private” club is conflicts with the working definition we supplied for that term for purposes of the State Human Rights Law in Power Squadrons (59 NY2d 401, supra). There, we emphasized that whether a "distinctly private” club is a place of public accommodation is a question of fact (id., at p 412). We set forth — in permissive terms — five factors that may be considered in determining whether the statutory exemption applies (at pp 412-413): "[i]n determining the issue, the fact finder may consider whether the club (1) has permanent machinery established to carefully screen applicants on any basis or no basis at all, i.e., membership is determined by subjective, not objective factors; (2) limits the use of the facilities and the services of the organization to members and bona fide guests of members; (3) is controlled by the membership; (4) is nonprofit and operated solely for the benefit and pleasure of the members; and (5) directs its publicity exclusively and only to members for their information and guidance”. We in no way suggested that failure to meet these precise criteria would be the only way that a club could be found to be not "distinctly private”. Indeed, we derived those five factors from case law decided under the more liberal Federal civil rights statute (Wright v Cork Club, 315 F Supp 1143, 1153; 42 USC § 2000a [e]; see, Note, Discrimination in Access to Public Places: A Survey of State and Federal Public Accommodations Laws, 7 NYU Rev L & Soc Change 215, 251) that excludes from its purview "private clubs or other establishments not in fact open to the public” (42 USC § 2000a [e]). By contrast, the State Legislature’s very use of the adverb "distinctly” in its own statutory exemption for private clubs indicates a concerted attempt to narrow its application (see, Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d, at p 412, supra). In keeping with the State scheme, the City employs the same modifier (Administrative Code § 8-102 [9]) and limits its own private club exemption to those that do not provide "regular” meal service and do not "regularly” receive certain payments from nonmembers in furtherance of their business (Local Laws, 1984, No. 63 of City of New York).
C.
The hallmark of the private club, we said in Power Squad *221 rons (supra, at p 412), was its "selectivity in its membership”. Plaintiff contends that its member clubs "steadfastly adhere to exacting standards in their admissions policies, governance and administration of their facilities”; that they therefore qualify as "distinctly private” under Power Squadrons (supra); and that Local Law No. 63 represents a radical departure from that decision. However, Local Law No. 63 does not prohibit the City fact finder from considering the test of selectivity or, indeed, any of the Power Squadrons factors. It merely establishes that a private club will be deemed to have lost the essential characteristic of selectivity and instead have become "affected with a public interest” when it meets the City’s three-prong test (Matter of United States Power Squadrons v State Human Rights Appeal Bd., at p 414, supra). Thus, Local Law No. 63 does not purport to define for purposes of the City Human Rights Law all circumstances in which a club may not be "distinctly private”. Rather, it merely spells out objectively in more concrete terms the circumstances when a club, because of its large size, "public nature,” and volume of business-related activities will be deemed to have lost the essential characteristic of, privateness — i.e., selectivity. It is not unreasonable to determine that a large club which receives substantial business-related income from nonmembers cannot be selective in its membership and use of its facilities. Therefore, Local Law No. 63’s definition of "distinctly private” is not inconsistent with the use of this term in Executive Law § 292 (9) as interpreted in Power Squadrons.
Indeed, plaintiff goes too far when it asserts, relying on Wholesale Laundry Bd. v City of New York (12 NY2d 998, affg 17 AD2d 327, supra), that Local Law No. 63 is inconsistent with Power Squadrons because activity which arguably would be permitted under State decisional law is prohibited by the local law. As we stated in People v Cook (34 NY2d 100, 109, supra): "This statement of the law is much too broad. If this were the rule, the power of local governments to regulate would be illusory”. Rather, the general principle set forth in Wholesale Laundry applies only when the Legislature has "evidenced a desire that its regulations should pre-empt the possibility of varying local regulations” (id.; see, Consolidated Edison Co. v Town of Red Hook, 60 NY2d, at pp 107-108, supra [observing that inconsistency may exist where local laws "prohibit what would be permissible under State law * * * so as to inhibit the operation of the State’s general law”]) or *222 when the State specifically permits the conduct prohibited at the local level (see, Matter of Kress & Co. v Department of Health, 283 NY 55, 59; 6 McQuillin, Municipal Corporations § 23.07, at 391 [3d ed]). As we have already noted, no preemption is claimed here or is discernible from the statutory scheme (see generally, Executive Law §§ 295, 300; General Municipal Law §§ 239-o, 239-s). Moreover, neither the State Human Rights Law itself nor Power Squadrons mandates exemption for a club that meets the three-prong test of Local Law No. 63 (see, People v Judiz, 38 NY2d 529, 531-532, supra).
Finally, we reject plaintiff’s contention that the local law impermissibly shifts the onerous burden of establishing exemption on the clubs (see, Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d, at p 412, supra). Any allocation of the burden of proof effected by the enactment bears a reasonable relationship to the police power and is reasonably calculated to achieve by objective means the legitimate purpose of ensuring that only "distinctly private” clubs be exempt (see generally, D’Angelo v Cole, 67 NY2d 65, 69; People v Cook, 34 NY2d 100, 107, supra).
II.
We next address plaintiff’s argument that Local Law No. 63 violates its members’ rights to privacy, free speech and association under the Federal Constitution.[3] Using the formulation set forth by the Supreme Court in Roberts v United States Jaycees (468 US 609), we conclude that the law does not abridge the club members’ freedom of intimate association. The definition read into the City Human Rights Law under Power Squadrons (59 NY2d 401, 412-413, supra) of "distinctly private” and the three-prong test set forth in Local Law No. 63 itself, together adequately assess "objective characteristics” of the organizations at issue, including criteria such as their "size, purpose, policies, selectivity, congeniality, and other characteristics that in [this] particular case [are] * * * pertinent” (Roberts v United States Jaycees, 468 US, at p 620, supra). In keeping with these objective and permissive factors, *223 the law in effect deems a club that is large and where "much of the activity central to the * * * maintenance of the association involves the participation of strangers to that relationship” to have lost any claimed protection of intimate association (Roberts v United States Jaycees, 468 US, at p 621, supra).
Plaintiff also argues that Local Law No. 63 violates its freedom of expressive association or the freedom to engage as a group in pursuit of a wide variety of "political, social, economic, educational, religious, and cultural ends” (Roberts v United States Jaycees, 468 US, at p 622, supra; see, Griswold v Connecticut, 381 US 479, 483; N. A. A. C. P. v Alabama, 357 US 449, 460-461). It is undisputed on this record that plaintiffs constituent members have been organized "to provide a comfortable and congenial social atmosphere * * * and to engage in political, academic, social and/or recreational interchange with one another on a regular and continual basis”. But compelling governmental interests, unrelated to the suppression of ideas — here the City’s strong public policy to eliminate discrimination against women and minorities (see, Legislative Declaration, Local Laws, 1984, No. 63 of City of New York § 1; Administrative Code § 8-101) — manifestly justify some infringement (Roberts v United States Jaycees, 468 US, at p 624, supra). Indeed, the City has a compelling interest in assuring to women and minorities equal access to "advantages” and "privileges” (Administrative Code § 8-107 [2]) such as " '[leadership skills, * * * business contacts and employment promotions’ ” (Roberts v United States Jaycees, 468 US, at p 626, supra; see generally, Burns, Exclusion of Women from Influential Men’s Clubs: The Inner Sanctum and the Myth of Full Equality, 18 Harv CR-CL L Rev 321 [1983]; Goodwin, Challenging the Private Club: Sex Discrimination Plaintiffs Barred at the Door, 13 Sw U L Rev 237, 280-284 [1982]).
Moreover, through Local Law No. 63, the City has employed the least restrictive means to achieve its ends (see, Roberts v United States Jaycees, 468 US, at p 626, supra.). The law evinces an intent not to dictate the selection policies or activities of the private clubs except to the extent necessary to ensure that they do not automatically exclude persons from membership or use of the facilities on account of invidious discrimination (Legislative Declaration § 1). Notably, plaintiff has made no showing that its members’ free speech rights will be abridged — either in altering the policies or functions of the various organizations (see, Roberts v United States Jaycees, 468 *224 US, at p 626, supra; Hishon v King & Spalding, 467 US 69, 78), or in creating a chilling effect on the behavior of club members (see, Burns, Exclusion of Women from Influential Men’s Clubs: The Inner Sanctum and the Myth of Full Equality, 18 Harv CR-CL L Rev 321, 344-345 [1983]).
Finally, although plaintiff’s constituent members have a right to free speech and to association, they 1‘ack the right to practice invidious discrimination against women and minorities in the distribution of important business advantages and privileges (see, Roberts v United States Jaycees, 468 US, at p 628, supra; Runyon v McCrary, 427 US 160, 175-176; Norwood v Harrison, 413 US 455, 469). Any incidental intrusion on protected free speech rights accomplished by the local measure is no greater than is necessary to fulfill the State’s legitimate purpose in extending to them equal opportunity in employment (see, Roberts v United States Jaycees, 468 US, at pp 628-629, supra).
We have considered plaintiff’s other arguments and find them to lack merit. Accordingly, the order of the Appellate Division should be affirmed.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

.See, Legislative Declaration, Local Laws, 1984, No. 63 of City of New York § 1.

.NY Constitution, art IX, § 2 (c) provides in pertinent part: "In addition to powers granted in the statute of local governments or any other law * ** * (ii) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to the following subjects, whether or not they relate to the property, affairs or government of such local government * * * The government, protection, order, conduct, safety, health and well-being of persons or property therein” (i.e., the police power).

.Although plaintiff commenced this action on these theories under both State and Federal Constitutions, it now only claims violation of Federal law. Accordingly, we do not address any allegation of violations under analogous provisions of the State Constitution.
Nor do we address plaintiff’s allegation below that Local Law No. 63 constitutes an unlawful bill of attainder (US Const, art I, § 10) because it has abandoned this argument as a ground for reversal.