*1019 OPINION OF THE COURT
Nicholas Colabella, J.
In a CPLR article 78 proceeding petitioner, Community Resource Center for the Developmentally Disabled, Inc. (CRC), and intervenors-petitioners, the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) and Arthur Webb, seek to annul a determination by respondent Pici, as Commissioner of the Bureau of Housing and Buildings (Bureau), to withhold a building permit for a community residence. Interveners also seek to invalidate certain local laws regulating community residences and to obtain damages based on respondents’ alleged discrimination against the mentally retarded.
BACKGROUND
The petition by CRC alleged, inter alia, that the permit application — filed October 16, 1987 — fully complied with respondents’ requirements. Therefore, CRC claimed that the withholding of a permit lacked a rational basis and constituted a failure to perform a duty enjoined by law.
In defense, respondents submitted an affidavit by respondent Pici dated March 10, 1988, in support of their answer to CRC’s petition. Pici alleged that the permit was withheld because the application was incomplete in the following respects: (a) energy calculations were not included on the blueprints; (b) a demolition permit had not been obtained; (c) written approvals by other departments had not been received. These allegations, however, were not stated to be on personal knowledge, but rather were made in Pici’s capacity to "oversee and approve” building permit applications.
In reply CRC submitted an affidavit from its architect, Walter Rooney, dated March 18, 1988, which, based on personal knowledge, controverted Pici’s affidavit. He stated the energy calculations were provided by letter to Thomas Terry —a plan reviewer with the Bureau — which was accepted as satisfactory on January 7, 1988. Rooney asserted he even resubmitted the plans on March 18, 1988, with the calculations inscribed, in order to remove Pici’s objections.
Additionally, Rooney challenged the requirement for a demolition permit because the structure in question — a tool shed —could be unscrewed from its base and removed. He further alleged that Terry approved the removal of the shed, without a separate permit, while reviewing revisions on the plans.
*1020 Rooney also maintained that each of the departments involved confirmed to him that they had verbally approved the plans to Terry in February 1988. Terry purportedly acknowledged he had received the verbal approvals and accepted them as sufficient.
Subsequently, Rooney’s allegations were incorporated in the intervenors’ petition to which respondents were directed to serve a verified answer with supporting affidavits. That second answer simply denied Rooney’s allegations, while the affidavit in support referred the court to Pici’s earlier affidavit.
SUFFICIENCY OF THE PERMIT APPLICATION
A threshold issue is the adequacy of the response to the petitions. An article 78 proceeding is similar in character to a motion for summary judgment (Matter of Gagnon v Board of Educ., 119 AD2d 674, 675) in requiring an adverse party to file "a verified answer, which must state pertinent and material facts showing the grounds of the respondent’s action complained of’ (CPLR 7804 [d]), "and submit with the answer affidavits or other * * * proof showing such evidentiary facts as shall entitle him to a trial of any issue of fact” (CPLR 7804 [e]).
Respondents’ showing here was deficient in failing to adequately explain the basis of knowledge to verify the answer’s denial of paragraph 17 of intervenors’ petition. If anything, a lack of personal knowledge can be inferred in that the conversations alleged in paragraph 17 did not involve Assistant Corporation Counsel Barbour (the verifier), but rather Bureau Engineer Terry and members of other departments. Barbour’s supporting affidavit was also patently conclusory in asserting that the reasons stated in Pici’s March 10, 1988 affidavit were "valid legal objections.” This ignored not only the fact that Pici’s affidavit was unresponsive to Rooney’s allegations, but the fact that Pici’s affidavit itself was never stated to be based on personal knowledge. Such conclusory responses were insufficient to create triable issues of fact (Matter of Gagnon v Board of Educ., supra).
In addition, the court finds respondents’ objections to be disingenuous. Even if the energy calculations were not written on the blueprints, respondents have not specifically contested the allegation that the calculations were received by the Bureau. In fact, paragraph 17 of Barbour’s May 31, 1988 affidavit recited only two conditions — the demolition permit *1021 and the written approvals — as still outstanding. Therefore, it must be assumed that the Bureau had the energy information it needed to review the plans.
As for the demolition permit, respondents have failed to offer any justification for insisting on a separate demolition permit if the shed did not need to be demolished to be removed and other demolition work was simply included on the blueprints.
Likewise, respondents have failed to justify their position that the permit application could be withheld indefinitely pending receipt of written departmental approvals. To the contrary, since the obtaining of written approvals was something that petitioner had no control over, the onus was on respondents to see that such approvals were filed expeditiously. Section 32-28 of the Yonkers Building Code required the Department of Buildings to "approve or reject any application or plan, or revision thereto * * * within a reasonable time, and if approved [to] promptly issue a permit therefor” (emphasis added). Certainly, if verbal approvals were given in February 1988, as Rooney claimed, there was ample time to have done that.
RIGHT TO A HEARING
Alternatively, respondents maintained that a public hearing had to be conducted before a building permit could be issued for a community residence. This was equally specious.
While a municipality may hold a hearing prior to forwarding its response to the sponsoring agency and the commissioner, this right is limited by the time allowed the municipality to interpose a response. "If the municipality does not respond within forty days, the sponsoring agency may establish a community residence at a site recommended in its notice” (Mental Hygiene Law § 41.34 [c] [1]). In this case, it is uncontested that period expired without action by the municipality. As a result, the municipality waived the right to object (Matter of Polo Park Civic Assn. v Kiernan, 133 AD2d 116, 117; Town of Oyster Bay v State of New York Off. of Mental Retardation & Developmental Disabilities, 115 AD2d 536; City of Oswego v Prevost, 91 AD2d 848; Matter of Town of Stony Point v New York State Off. of Mental Retardation & Developmental Disabilities, 78 AD2d 858) and, with it, the attendant right to conduct a public hearing under Mental Hygiene Law § 41.34 (c) (2).
*1022 In summary, the refusal to issue a building permit lacked a rational basis and was arbitrary and capricious (Matter of Vergata v Superintendent of Bldgs. of Vil. of Westbury, 108 AD2d 750). Accordingly, respondent Pici is directed to issue a building permit to petitioner CRC within two days of receipt of this decision and order.
INCONSISTENCY WITH STATE LAW
Intervenors’ further request for judgment, declaring certain local laws void, is inappropriate within an article 78 proceeding. However, it may be severed and considered as made within an action for declaratory judgment (CPLR 103 [c]; Matter of Overhill Bldg. Co. v Delany, 28 NY2d 449, 458; New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272, 276).
In that context, the court finds that Yonkers Zoning Ordinance §§ 107-19 and 107-78 are inconsistent with Mental Hygiene Law § 41.34 to the extent they regulate community residences as a special exception use. Mental Hygiene Law § 41.34 (c) (1) plainly limits the municipality’s role to providing input into the placement of community residences, while subdivision (c) (5) of that section restricts the objections that can be made and leaves their determination to the commissioner of the licensing agency.
Further, subdivision (f) mandates that a community residence be treated the same as a "family unit”. This subdivision was enacted "to put an end to disruptive litigation over the location of community residences within 'family’ housing zones” (Crane Neck Assn. v New York City/Long Is. County Servs. Group, 61 NY2d 154, 164) and to prevent communities from using " 'special use permits and restrictive zoning ordinances’ ” (supra, at 165) "to keep community residences out of their neighborhoods” (Matter of C.E.L. Lbr. v Roberts, 109 AD2d 1002, 1003). Consequently, the foregoing local laws are declared void and respondents are enjoined from their enforcement (see generally, New York State Club Assn. v City of New York, 69 NY2d 211, 217; Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105).
OTHER RELIEF
The court reserves decision on the remaining causes of *1023 action for violations of 42 USC § 1983, Human Rights Law (Executive Law) § 296 (6) and Civil Rights Law § 40-c, and attendant damages. Petitioners are directed to submit supplemental memoranda of law addressing these claims by September 9, 1988. Respondents shall respond by September 23, 1988. Petitioners may reply by September 30, 1988.