■ INCORPORATED VILLAGE OF NYACK, Respondent, v DAYTOP VILLAGE, INC., et al., Appellants.—In an action for injunctive relief and for a judgment declaring, *inter alia*, that the defendants are required to comply with the provisions of the Village of Nyack Zoning Code in order to operate a State-approved residential drug treatment facility, the defendants appeal from an order of the Supreme Court, Rockland County (Meehan, J.), dated August 6, 1990, which, *inter alia*, granted the plaintiff's motion for an injunction preliminarily enjoining the defendants from operating a residential drug treatment facility at a specified location during the pendency of the action and denied their cross motion, in effect, for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, the plaintiff's motion for a preliminary injunction is denied, the defendants' cross motion for summary judgment is granted, and the matter is remitted to the Supreme Court, Rockland County, for the entry of a judgment declaring that by virtue of the doctrines of preemption and inconsistency, the defendants cannot be required to comply with the provisions of the Village of Nyack Zoning Code in order to operate their State-approved residential drug treatment facility at the former Quality Inn building and site.

On February 2, 1990, the defendants, two not-for-profit corporations, applied to the New York State Division of Substance Abuse Services (hereinafter DSAS), pursuant to 14 NYCRR 1010.1 (a), for a license to operate a "drug free residential treatment program" at a location in the Incorporated Village of Nyack which formerly housed a "Quality Inn". Upon being advised of this application, the plaintiff notified the defendants that the former Quality Inn was located in a C-2 General Commercial District, in which residential uses are not permitted *(see,* Incorporated Village of Nyack Zoning Code § 59-11 [B] [1]). The defendants, however, did not apply for a variance from the zoning ordinance, but did receive a certificate of approval from the DSAS to operate a "drug free residential substance abuse treatment program" at the Quality Inn location.

While the application to the DSAS was still pending, the Village commenced this action seeking a judgment declaring that the defendants' intended use of the Quality Inn location is prohibited by the Village of Nyack Zoning Code, and

seeking a permanent injunction against the operation of that type of facility until a variance and certificate of occupancy were obtained. The Village also moved for a preliminary injunction pending the outcome of the litigation. The Supreme Court granted the Village's motion, and denied the defendants' cross motion, in effect, for summary judgment dismissing the complaint, finding, based upon a 1975 case decided by the Appellate Division, Fourth Department (see, Matter of Ibero-American Action League v Palma, 47 AD2d 998), that compliance with the Village Zoning Code was required. The defendants appeal, and we reverse.

With the enactment of Mental Hygiene Law article 19, the New York State Legislature explicitly recognized that substance abuse is a major health problem which is increasing and which requires "prevention and early intervention efforts and other treatment capabilities across the state" (Mental Hygiene Law § 19.01 [a]). Thus, the Legislature declared it the policy of the State "to conduct coordinated research and to develop program [sic] to further the prevention and early detection of * * * substance abuse and substance dependence and to develop a comprehensive system of services to serve the full range of needs of * * * substance abusers and substance dependent persons" (Mental Hygiene Law § 19.01 [b]). To effectuate this policy the Legislature created the Division of Substance Abuse Services, which is charged with the power and duty to "inspect and approve or disapprove the facilities of and the services provided by substance abuse programs" (Mental Hygiene Law § 19.07 [b] [5]), as well as the responsibility of promulgating regulations "establishing procedures for granting and denying such approval" (Mental Hygiene Law § 23.01 [a] [1]). Those regulations are embodied in parts 1010 through 1030 of title 14 of the Official Compilation of Codes, Rules and Regulations of the State of New York. A recurrent theme therein is "that, wherever practical, substance abuse clients should receive treatment and other services in the community in which they live" (14 NYCRR 1010.4 [b] [3]). The approval and review procedures set up by the DSAS require compliance with the State Environmental Quality Review Act (see, 14 NYCRR 1010.4 [a] [1]), but, unlike the State regulations applicable to the Ibero-American case, which was relied upon by the Supreme Court herein, they do not require compliance with applicable local laws and zoning ordinances. Moreover, to require such compliance judicially would clearly impose additional restrictions on rights granted by State law and thereby "tend to inhibit the operation of the State's

general law and thereby thwart the operation of the State's overriding policy concerns *(New York State Club Assn. v City of New York,* [69 NY2d 211], at 217, 221; *Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 108, *supra; see also, Floyd v New York State Urban Dev. Corp.,* 33 NY2d 1, 7)" *(Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 97; *see also, People v Town of Clarkstown,* 160 AD2d 17, 21). Thus, under the doctrines of preemption and inconsistency, the defendants may not be required to comply with the Village of Nyack Zoning Code in order to operate this State-approved residential substance-abuse treatment facility at this State-approved location, and are entitled to a declaration to this effect. Brown, J. P., Harwood, and Miller, JJ., concur.

Ritter, J., dissents and votes to affirm the order appealed from, with the following memorandum: The narrow issue in this case, and in a related appeal *(see, Town of Oyster Bay v Syosset's Concern About Its Neighborhood,* 173 AD2d 813 [decided herewith]), is whether Mental Hygiene Law article 19 was intended to preempt municipal zoning codes establishing districts where the operation of residential substance abuse treatment facilities is not a permitted use. In both cases, there are other districts in the affected municipalities where such facilities may operate, but the sponsors of the respective programs have chosen sites where local zoning does not permit such a treatment facility. They have secured certificates of approval from the Division of Substance Abuse Services (hereinafter DSAS) to operate facilities at the specified locations, but have not obtained a variance in order to comply with the local zoning code. The majority holds, under the doctrines of preemption and inconsistency, that the sponsor of a State-approved substance-abuse treatment program cannot be required to comply with local zoning codes. I believe no inconsistency exists, and the zoning power is in harmony with the State law that authorizes such facilities rather than preempted by it.

There is clearly no express conflict between the Mental Hygiene Law and local zoning laws. Zoning laws address an entirely different subject matter, namely, the regulation of land use generally. The authority to enact and implement such laws has been delegated by the Legislature to local governments *(see,* Village Law art 7; Town Law art 16; General City Law § 20; Municipal Home Rule Law § 10 [1] [i]). The preemption doctrine recognizes that where there is an overriding State interest, the home rule powers of local government may be superseded by act of the State Legislature. The doc-

trine applies either (1) in cases of express conflict, a situation clearly not present here, and (2) in cases where the State Legislature has evidenced an intent to occupy the entire field *(see, Albany Area Bldrs. Assn. v Town of Guilderland,* 74 NY2d 372, 377).

The second prong of the preemption doctrine implicates the concept of inconsistency, and requires close analysis of the Legislature's intent. Where the State has intentionally occupied the entire field, and effectively precluded the possibility of local regulation, a local law may be invalidated as inconsistent with the State's overriding interest because it imposes additional restrictions on rights granted by State law *(see, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, 97). However, the fact that State and local laws touch upon the same area, is insufficient to support a determination that the State has intentionally preempted the entire field of regulation in a given area *(Jancyn Mfg. Corp. v County of Suffolk, supra,* at 99; *see also, Monroe-Livingston Sanitary Landfill v Caledonia,* 51 NY2d 679, 683).

I recognize that the legislative intent to preempt need not be express. "It is enough that the Legislature has impliedly evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a particular area" *(New York State Club Assn. v City of New York,* 69 NY2d 211, 217, *affd* 487 US 1). In my view, no preemptive intent is evident from either the Legislature's declaration of State policy or the regulatory scheme contemplated under the pertinent provisions of the Mental Hygiene Law *(see, Matter of Ibero-American Action League v Palma,* 47 AD2d 998).

The statutory scheme under Mental Hygiene Law article 19 can be compared with that of Mental Hygiene Law article 41 wherein the Legislature expressly withdrew local government's zoning authority with respect to the siting of community residential facilities for the mentally disabled *(see,* Mental Hygiene Law § 41.34 [known as the "Padavan Law"]). When the sponsor of a proposed facility under the Padavan Law and the affected local municipality cannot agree upon a site, the commissioner of the office with responsibility for the issuance of a license or operating certificate to the proposed facility is empowered to resolve the issue. The statute allows either party to the dispute to request a hearing before the appropriate commissioner and guidelines are established for how the determination is to be made, subject to review under CPLR

article 78. The Legislature specifically made the following declaration in order to make its intent on this matter clear: "It is further intended that communication and cooperation between the various state agencies, local agencies and local communities be fostered by this legislation, and that this will be best achieved by establishment of clearly defined procedures for the selection of locations for community residences, to best protect the interests of the mentally disabled and ensure acceptance of community residences by local communities" (L 1978, ch 468, § 1).

In my view, it is significant that there was no comparable legislative finding in Mental Hygiene Law article 19, or expression of preemptive intent in the wake of the Fourth Department's 1975 decision in *Matter of Ibero-American Action League v Palma* (47 AD2d 998, *supra*). In *Ibero-American,* the court found that a reading of the Mental Hygiene Law as it pertained to the establishment of drug rehabilitation centers, showed no clearly defined intent to preempt local regulation of the location of such facilities. Although the pertinent statutory provisions construed by the court in *Ibero-American* were repealed when the Legislature recodified this area of the Mental Hygiene Law in 1977, the declaration of policy under the current statute is substantively the same as under the prior law.

The precedential value of *Ibero-American* is not diminished by the fact that current State regulations no longer require applicants to comply with local laws and ordinances. Administrative agencies are limited to implementing the law as enacted by the Legislature. DSAS cannot confer upon itself the authority to preempt local governments on the subject of site selection under the guise of a policy that is neither expressed nor intended by the Legislature. The absence of an express delegation of authority to DSAS is a clear indication that the Legislature did not intend to preempt local government on the subject of site selection *(see, Jancyn Mfg. Corp. v County of Suffolk,* 71 NY2d 91, *supra; New York State Club Assn. v City of New York,* 69 NY2d 211, 219, *affd* 487 US 1, *supra*).

There is no question that the declaration of policy in Mental Hygiene Law § 19.01 is expansive. However, it is apparent from a reading of the entire statutory scheme, that the Legislature's intent is to foster cooperation and coordinated efforts by State and local governments. Contrary to the clear declaration of policy under the Padavan Law, there is no legislative expression of the need or intention to preempt local government on the subject of site approval *(see, Jancyn Mfg.*

*Corp. v County of Suffolk, supra,* at 98; *see also, Consolidated Edison Co. v Town of Red Hook,* 60 NY2d 99, 105-106). DSAS is empowered to inspect and approve or disapprove the facilities of and the services provided by substance abuse programs *(see,* Mental Hygiene Law § 19.07 [b] [5]). In furtherance of its mandate, DSAS has promulgated comprehensive regulations regarding the safety and adequacy of the *physical plant* for the program proposed *(see,* 14 NYCRR 1010.4 [b] [1]; *see also,* 14 NYCRR 1020.6). Critically, and conspicuously absent from the statutory scheme is any language delegating authority to DSAS to establish standards for site approval or giving that agency authority to make the final selection.

Since the Legislature did not intend to preempt local government on the issue of site selection, the State and local ordinances involved here may be harmonized so as to avoid an abridgement of the local government's power to regulate land use through zoning powers expressly delegated to them *(see, Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 134). The locality here has not singled out State regulated substance abuse facilities as a separate use upon which distinct and more burdensome conditions are being imposed. While there is no question that the sponsors here are proposing worthwhile public programs, it does not follow that they are thereby entitled to set up their operation at any location of their choosing *(see, People v Renaissance Project,* 36 NY2d 65, 69). Moreover, the zoning ordinance does not totally prohibit the establishment of a facility otherwise approved by a State agency, but only requires that it conform to certain criteria, including geographic restrictions, well within the competence of a local zoning board to determine *(see, Matter of Ibero-American Action League v Palma,* 47 AD2d 998, *supra).*

On the narrow issue presented here, I respectfully dissent and vote to affirm the order appealed from.