# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 82
Police Benevolent Association of
the City of New York, Inc., et al.,
     Appellants,
     v.
City of New York,
     Respondent.

Anthony P. Coles, for appellants Sergeants Benevolent Association of the City of New York, et al.
Steven A. Engel, for appellant Police Benevolent Association of the City of New York, Inc.
Richard Dearing, for respondent.

GARCIA, J.:

We are asked to determine whether section 10-181 of the Administrative Code of

the City of New York, which makes criminal the use of certain restraints by police officers

during an arrest, violates the New York Constitution on either preemption or due process

- 1 -

grounds.  Because section 10-181 does not conflict with state law or regulate in a field in which the state has expressly or impliedly precluded local legislation, it is a permissible exercise of local lawmaking authority.  The language of the section also provides fair notice of the conduct prohibited and is sufficiently definite to avoid arbitrary or discriminatory enforcement and is therefore not void for vagueness.

I.

In July 2020, New York City Administrative Code § 10-181 became law, making it a misdemeanor offense for any "person" to

> "restrain an individual in a manner that restricts the flow of air or blood by compressing the windpipe or the carotid arteries on each side of the neck, or sitting, kneeling, or standing on the chest or back in a manner that compresses the diaphragm, in the course of effecting or attempting to effect an arrest" (Administrative Code of City of NY § 10-181 [a], [b]).

Although similar legislation had been considered in prior years, the enactment of section 10-181 was spurred, in large part, by the widely publicized deaths of Eric Garner and George Floyd following the use of force by police officers during their arrests (*see* NY City Council, Transcript of the Minutes of the Stated Meeting, June 18, 2020, Local Law Bill Jacket, Local Law No. 66 [2020] of City of NY).

Soon after Administrative Code § 10-181 took effect, plaintiff Police Benevolent Association of the City of New York and 16 other law enforcement unions commenced this action against the City seeking a declaration that section 10-181 is unconstitutional. Plaintiffs alleged that section 10-181 is field and conflict preempted by a combination of state laws governing the arrest authority of police officers (*see e.g.* CPL 140.10 [3]),

establishing the defense of justification (*see e.g.* Penal Law § 35.30), and criminalizing strangulation-related offenses—including then-newly enacted Penal Law § 121.13-a, which made it a felony for police and peace officers to cause serious physical injury or death through the use of certain types of restraints, including chokeholds (*see* L 2020, ch 94). Plaintiffs also asserted that Administrative Code § 10-181 violates the State Constitution's due process clause and is void for vagueness because the portion of the law relating to compression of an arrestee's diaphragm fails to give adequate notice of the conduct prohibited. To support their vagueness challenge, plaintiffs submitted affidavits by two former New York City Police Department officials who averred that police officers would not understand what it means to "compress" an arrestee's "diaphragm" and would not be able to discern, at any given point during an arrest, whether they are in fact "compressing" the diaphragm. Plaintiffs also proffered affidavits from two medical experts, both of whom opined that Administrative Code § 10-181 was "vague and confusing." Plaintiffs ultimately sought to permanently enjoin the local law's enforcement.

In response, the City argued that Administrative Code § 10-181 constituted a proper exercise of its constitutional home rule authority that neither regulated in a preempted field nor conflicted with state law. As to plaintiffs' vagueness claim, the City proffered NYPD training materials illustrating that officers are instructed regarding the movement and function of the diaphragm, and that officers are trained not to use chokeholds or to sit, kneel, or stand on the chests or backs of arrestees.

Supreme Court granted plaintiffs summary judgment and enjoined enforcement of Administrative Code § 10-181, declaring that the local law's diaphragm compression

language was "unconstitutionally vague" and rendered it "void in its entirety." The court first rejected plaintiffs' preemption claims, holding that plaintiffs had failed to demonstrate either that the state legislature preempted the field of arrest restraints or that section 10-181 is conflict preempted. However, the court concluded that section 10-181 is void for vagueness because it failed to provide sufficient "guidance on the meaning" of the phrase "compresses the diaphragm," as evidenced by the NYPD training materials' lack of guidance on the meaning of the phrase and broad instruction to avoid sitting, kneeling, or standing on an arrestee's torso.

The Appellate Division reversed, granted the City's motion for summary judgment dismissing the complaint in its entirety, denied plaintiffs' cross motion, and declared that Administrative Code § 10-181, as challenged, is constitutional (205 AD3d 552, 552 [1st Dept 2022]). The Appellate Division agreed with Supreme Court that section 10-181 is not preempted but held that the lower court "should not have found the diaphragm compression ban to be unconstitutionally vague" (205 AD3d at 553). Acknowledging that the diaphragm compression language may be imprecise, the Appellate Division nonetheless concluded that section 10-181 is "sufficiently definite to give notice of the prohibited conduct and does not lack objective standards or create the potential for arbitrary or discriminatory enforcement" (205 AD3d at 553). The Appellate Division rejected plaintiffs' claim that it might be impossible to assess whether a person's diaphragm was being "compressed," stating that "[a] trained police officer will be able to tell when the pressure [they are] exerting on a person's chest or back, in the vicinity of the diaphragm, is making it hard for the person to breathe" (id. at 553-554).

Plaintiffs appealed to this Court as of right on constitutional grounds (*see* CPLR 5601 [b] [1]), and we now affirm.

## II.

The constitutional home rule provision authorizes municipalities to adopt local laws pertaining to the "government, protection, order, conduct, safety, health and well-being" of their citizens, so long as such local laws are "not inconsistent" with the constitution or general state laws (NY Const, art IX, § 2 [c] [10]). The doctrine of preemption acts as a significant restriction on the home rule powers of municipalities. Local laws may be inconsistent with and preempted by state law either because the legislature has occupied the relevant field of regulation or because the local law conflicts with state law (*see Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]).

Field preemption "prohibits a local government from legislating in a field or area of the law where the '[l]egislature has assumed full regulatory responsibility'" (*People v Torres,* 37 NY3d 256, 265 [2021], quoting *DJL Rest. Corp. v City of New York*, 96 NY2d 91, 95 [2001]). When the state has assumed that responsibility and preempted the entire field, "a local law regulating the same subject matter is deemed inconsistent" with state law for purposes of the home rule provision if it either "prohibits conduct which the [s]tate law, although perhaps not expressly speaking to, considers acceptable or at least does not proscribe or . . . imposes additional restrictions on rights granted by [s]tate law" (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 97 [1987]; *see New York State Club Assn. v City of New York*, 69 NY2d 211, 221-222 [1987], *affd* 487 US 1 [1988]; *Monroe-Livingston Sanitary Landfill v Town of Caledonia*, 51 NY2d 679, 683 [1980]). Permitting such laws

"to operate in a field preempted" by the state "would tend to inhibit the operation of the [s]tate's general law and thereby thwart the operation of the [s]tate's overriding policy concerns" (*Jancyn Mfg. Corp.*, 71 NY2d at 97; *see Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500, 505 [1991]).

The state legislature's intent to preempt local legislation need not be expressly stated. Intent to occupy a field to the exclusion of local legislation can be implied from a declaration of state policy, the state's enactment of a "comprehensive and detailed regulatory scheme in a particular area," or "from the nature of the subject matter being regulated and the purpose and scope of the [s]tate legislative scheme, including the need for [s]tate-wide uniformity in a given area" (*People v Diack*, 24 NY3d 674, 679 [2015] [internal quotation marks and citations omitted]; *see Albany Area Bldrs. Assn.*, 74 NY2d at 377; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 105 [1983]). Plaintiffs argue that the state has occupied the field of physical restraints used during arrest and that Administrative Code § 10-181 is preempted by a combination of state criminal procedure laws regulating arrest procedures (*see* CPL arts 120, 140), criminal statutes establishing statewide strangulation offenses (*see* Penal Law art 121), and the Penal Law provisions governing the justification defense (*see* Penal Law art 35). We are not persuaded.

While plaintiffs are correct that the legislature has established an "integrated and comprehensive system of laws" administering criminal procedure statewide (*People v Douglass*, 60 NY2d 194, 205 [1983]), in our view, Administrative Code § 10-181 is not fairly characterized as regulating criminal procedure. Rather, the local law defines a

substantive criminal offense and to the extent the CPL arguably preempts the field of criminal procedure, we conclude section 10-181 "only incidentally" touches upon a matter of criminal procedure (*DJL Rest. Corp.*, 96 NY2d at 97).

As to the relevant substantive criminal offenses defined in state law, article 121 of the Penal Law codifies various strangulation and obstruction of breathing crimes, and there is undisputedly some overlap between section 121.13-a and Administrative Code § 10-181. Plaintiffs highlight the chronology: the state legislature enacted the Eric Garner Anti-Chokehold Act (Penal Law § 121.13-a) shortly before the City Council passed Administrative Code § 10-181. Penal Law § 121.13-a makes it a felony for police or peace officers to cause serious physical injury or death during an arrest by criminally obstructing breathing or using chokeholds to intentionally impede breathing. Administrative Code § 10-181 likewise criminalizes the use of chokeholds. But the local law also prohibits certain conduct that restricts air flow by sitting, kneeling, or standing on a person's chest or back in a manner that compresses the diaphragm, and a violation of section 10-181 requires neither a specific intent to impede breathing nor the infliction of serious physical injury or death.

We have long recognized that municipalities may enact laws that supplement criminal offenses established by the state (*see e.g. People v New York Trap Rock Corp.*, 57 NY2d 371, 377-378 [1982]; *People v Judiz*, 38 NY2d 529, 531-532 [1976]; *People v Lewis*, 295 NY 42, 50 [1945]; *see also Torres*, 37 NY3d at 267). Moreover, "[t]he mere fact that a local law may deal with some of the same matters touched upon by [s]tate law does not render the local law invalid" (*Judiz*, 38 NY2d at 531-532 [internal quotation marks and

citations omitted]; *see Jancyn Mfg. Corp.*, 71 NY2d at 99; *New York Trap Rock Corp.*, 57 NY2d at 378). Nothing in article 121 of the Penal Law, including the enactment of section 121.13-a, evinces a general preemptive intent. While the state legislature believed section 121.13-a was necessary in part due to the apparent ineffectiveness of the NYPD's *departmental* ban on the use of chokeholds (*see* Assembly Mem in Support, Bill Jacket, L 2020, ch 94 at 6-7), this suggests only that the state determined that a departmental approach to eliminating the use of chokeholds had proven insufficient. It does not establish intent to deprive the City Council of its legislative authority to enact consistent local laws regulating criminal offenses that may occur during arrest (*see Vatore v Commissioner of Consumer Affairs of City of N.Y.*, 83 NY2d 645, 650 [1994]; *Jancyn Mfg. Corp.*, 71 NY2d at 98-99; *Judiz*, 38 NY2d at 531-532; *compare Diack*, 24 NY3d at 683-684).

Plaintiffs argue that the justification defenses set forth in Penal Law article 35 support their claim, but these statutes in fact weigh against a determination of field preemption. It is undisputed that the Penal Law provisions defining the justifiable use of force are available to defendants in prosecutions arising under Administrative Code § 10-181. The justification defense is available in "any prosecution for an offense" (Penal Law § 35.00) which, by definition, includes violations of local laws or ordinances that carry sentences of imprisonment or fines (*see* Penal Law § 10.00 [1]). Penal Law § 35.30 specifically addresses the justification defense as applicable to the "use of physical force in making an arrest." By providing section 35.30 as a defense to "any prosecution for an offense," including local offenses related to use of force in making an arrest (Penal Law § 35.00), the legislature has left room for local governments to designate substantive offenses

related to such conduct by police officers.  We therefore reject plaintiffs' contention that

Administrative Code § 10-181 encroaches upon a preempted field.

Nor does Administrative Code § 10-181 directly or expressly conflict with state law.

Plaintiffs' conflict preemption arguments distill to a claim that section 10-181 prohibits

conduct that is not prohibited by Penal Law § 121.13-a.  However, as we have explained,

if the measure of conflict preemption was merely whether local laws prohibit conduct not

proscribed by state law, "'the power of local governments to regulate would be illusory'"

(*New York State Club Assn.*, 69 NY2d at 221, quoting *People v Cook*, 34 NY2d 100, 109

[1974]).  Local laws will often "prohibit something permitted elsewhere in the [s]tate.  That

is the essence of home rule" (*Cook*, 34 NY2d at 109).  A local law is invalid because it

prohibits that which state law allows "only where the [l]egislature has shown its intent to

preempt the field" (*Vatore*, 83 NY2d at 651).  Although this aspect of field preemption has

sometimes been confused with inconsistency for purposes of conflict preemption (*see e.g.*

*Zakrzewska v New School*, 14 NY3d 469, 480 [2010]; *Consolidated Edison Co. of N.Y.*, 60

NY2d at 107-108; *Engelman v Rofe*, 194 AD3d 26, 30 [1st Dept 2021]), a local law is

conflict preempted only if it directly or expressly conflicts with state law (*see DJL Rest.*

*Corp.*, 96 NY2d at 95; *New York State Club Assn.*, 69 NY2d at 222 [conflict exists where

the state "specifically permits the conduct prohibited at the local level"]).

As we have now clarified, the legislature has not preempted the field and therefore

Administrative Code § 10-181 is not rendered inconsistent with state law just because it is

broader in scope than Penal Law § 121.13-a (*see Jancyn Mfg. Corp.*, 71 NY2d at 100).

There can be no serious contention that the state specifically permits the conduct prohibited

by section 10-181 (*see New York State Club Assn.*, 69 NY2d at 221-222). Further, section 10-181 does not conflict with those provisions of state law that permit the necessary use of physical force (*see* Penal Law § 35.30), since a justification defense remains available in prosecutions for violations of the local law. Therefore, Administrative Code § 10-181 is a valid exercise of the City's municipal law-making authority.

### III.

Plaintiffs also assert that the local law's prohibition on restricting air flow by sitting, kneeling, or standing on a person's chest or back specifically "in a manner that compresses the diaphragm" is incapable of definition or common understanding and therefore violates due process. We disagree.

"It is a fundamental requirement of due process that a criminal statute must be stated in terms which are reasonably definite" (*People v Cruz*, 48 NY2d 419, 423-424 [1979]). However, local laws—like state statutes—enjoy an "'exceedingly strong presumption of constitutionality'" (*People v Stephens*, 28 NY3d 307, 312 [2016], quoting *Lighthouse Shores v Town of Islip*, 41 NY2d 7, 11 [1976]), and a facial attack on vagueness grounds requires the challenger to "carry the heavy burden of showing that the [law] is impermissibly vague in *all* of its applications" (*People v Stuart*, 100 NY2d 412, 421 [2003] [internal quotation marks and citation omitted]). Furthermore, we have recognized that facial unconstitutionality is demonstrated only "when vagueness permeates a [law] to the point where 'no standard of conduct is specified at all' or where the vagueness in the [law] is so great that it permits [those enforcing it] to exercise unfettered discretion in every

single case" (*Stuart*, 100 NY2d at 421, quoting *Coates v City of Cincinnati*, 402 US 611, 614 [1971]; *see People v Bright*, 71 NY2d 376, 383 [1988]).

The vagueness test is a two-step inquiry. First, the Court must determine "whether the statute in question is 'sufficiently definite' 'to give a person of ordinary intelligence fair notice that [their] contemplated conduct is forbidden'" (*Stuart*, 100 NY2d at 420, quoting *People v Nelson*, 69 NY2d 302, 307 [1987]; *see Torres*, 37 NY3d at 264). If the statute provides fair notice, the Court must then assess "'whether the enactment provides officials with clear standards for enforcement' so as to avoid 'resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application'" (*Stephens*, 28 NY3d at 312, quoting *Stuart*, 100 NY2d at 420–421). Although bifurcated, the questions are closely related; a local law too vague to put potential offenders on notice of the conduct prohibited likewise lacks "objective standards to guide those enforcing the laws" and permits enforcement based upon "personal, subjective idea[s] of right and wrong" (*Bright*, 71 NY2d at 383). "The use of precise language will ensure that both requirements are met" (*Stuart*, 100 NY2d at 421).

Plaintiffs' vagueness challenge targets the diaphragm compression language in Administrative Code § 10-181. Initially, the failure of a legislature to define the terms of an enactment does not itself render a law void for vagueness (*see generally People v Garson*, 6 NY3d 604, 617 n 7 [2006]). Here, a person of ordinary intelligence would understand the term "compress" to have its common meaning: "to press or squeeze" or "to reduce in size, quantity, or volume" (Merriam-Webster.com Dictionary, compress [https://www.merriam-webster.com/dictionary/compress]). Further, as evidenced by

plaintiffs' expert affidavits, the role of the diaphragm in respiration is generally understood. Contraction of the diaphragm enlarges space in the chest cavity, allowing the lungs to expand and fill with air upon inhalation. Conversely, when the diaphragm relaxes, the lungs deflate and expel air. Movement of the diaphragm in this manner is known to be an integral component of respiration. Significantly, Administrative Code § 10-181's reference to compression of the diaphragm "cannot be viewed in isolation, for it is but one element of a statute that gives greater definition to the proscribed conduct" (*People v Shack*, 86 NY2d 529, 539 [1995]). Reading the challenged clause in context, an ordinary person would understand that section 10-181 prohibits the application of pressure to an arrestee's chest or back through specified actions—sitting, kneeling, or standing—in a manner that impedes the person's ability to breathe by causing interference with the regular movement of the diaphragm.

Many of plaintiffs' objections to the statutory language raise proof issues for any prosecution, but difficulty in proving prohibited conduct does not render a statute void for vagueness; rather, "indeterminacy" as to what precisely is prohibited is the fatal flaw (*United States v Williams*, 553 US 285, 306 [2008]; *see People v Pagnotta*, 25 NY2d 333, 339 [1969]). In *People v Bright*, for example, we struck down a law prohibiting loitering without a "satisfactory explanation" because police officers were afforded complete discretion to determine whether a given explanation met the test and the law therefore provided ordinary citizens no notice of what conduct was prohibited (71 NY2d at 385). Similarly, in *People v New York Trap Rock Corp.*, we held unconstitutional a noise ordinance that "impermissibly would support a conviction on any sound which annoys

another person"—a purely subjective standard that amounted to "no standard at all" (57 NY2d at 380). By contrast, criminal liability under Administrative Code § 10-181 does not turn on subjective or undefinable terms. The text of section 10-181 provides objective notice of the specific conduct that may trigger criminal repercussions—namely, the application of pressure through sitting, kneeling, or standing on a person's back or chest in a manner that "compresses the diaphragm" so as to "restrict[] the flow of air" (Administrative Code § 10-181 [a]).

At its core, plaintiffs' vagueness challenge rests on their contention that it is difficult for a potential offender to discern exactly when sitting, kneeling, or standing on a person's chest or back results in compression of an arrestee's diaphragm. Even accepting the position expressed in plaintiffs' affidavits that the language of Administrative Code § 10-181 may be imprecise from a technical or medical standpoint, that would not render the law fatally vague if it nonetheless "'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices'" (*Shack*, 86 NY2d at 538, quoting *United States v Petrillo*, 332 US 1, 8 [1947]; *see People v Illardo*, 48 NY2d 408, 414 [1979]). Both private citizens and law enforcement officers have long been required to gauge the impact of physical force used against others to ensure their employment of force is consistent with statutorily delineated parameters (*see* Penal Law art 35). As the Appellate Division stated, that the term compression "may not be the most accurate word, from a medical standpoint, to describe what happens to the diaphragm when someone sits, kneels, or stands on it does not mean that it is incapable of being understood" (205 AD3d at 553). Courts have long recognized that, "[c]ondemned to the use of words,

we can never expect mathematical certainty from our language" (*Illardo*, 48 NY2d at 414, quoting *Grayned v City of Rockford*, 408 US 104, 124 [1972]).

Inasmuch as we measure vagueness by the face of the local law (*see People v Firth*, 3 NY2d 472, 474 [1957]), the NYPD's decision to broadly caution officers against putting any pressure on an arrestee's torso neither injects uncertainty into section 10-181 nor suggests that its prohibition is incapable of being understood. Nor is the local law rendered vague by the absence of a requirement that the offender specifically intend to restrict breathing or cause injury beyond the restriction of air flow. Section 10-181 permissibly "prohibits a certain intentional course of conduct regardless of the wrongdoer's underlying purpose or motive" (*Nelson*, 69 NY2d at 307-308; *see Stuart*, 100 NY2d at 426).

We recognize that police officers are called upon to respond to dangerous and volatile situations requiring real-time assessment of the level of force necessary to safeguard the public and ensure officer safety. However, for criminal liability to attach under the challenged portion of Administrative Code § 10-181, a particular type of pressure must be voluntarily—not accidentally—applied to an arrestee's chest or back (*see* Penal Law § 15.10), and such conduct must fall outside the parameters of justifiable use of physical force (*see* Penal Law art 35).

Turning to the second prong of the vagueness analysis, Administrative Code § 10-181 sufficiently defines the conduct prohibited—that is, specific physical contact with particular areas of the body in a manner that produces a certain result—and therefore provides officials with clear guidelines for enforcement. Any determination of whether a violation has occurred is not left to the whim of an enforcer's "own personal, subjective

idea of right and wrong" (*Bright*, 71 NY2d at 383). Because section 10-181 does not "delegate[] basic policy matters to law enforcement officials, Judges and juries for resolution on an ad hoc, subjective basis" (*People v Foley*, 94 NY2d 668, 681 [2000]), we discern little risk of arbitrary or discriminatory enforcement.

Plaintiffs have failed to meet their burden of demonstrating that Administrative Code § 10-181 is either preempted or void for vagueness on its face. Accordingly, the order of the Appellate Division should be affirmed, with costs.

Order affirmed, with costs. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.

Decided November 20, 2023