[933 NYS2d 388]

SUNRISE CHECK CASHING AND PAYROLL SERVICES, INC., et al., Appellants, v TOWN OF HEMPSTEAD, Respondent.

Second Department, November 29, 2011

## APPEARANCES OF COUNSEL

*Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP*, Uniondale (*William S. Cohn* and *Richard C. Goldberg* of counsel), for appellants.

*Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.*, Garden City (*Peter Sullivan* and *Todd Steckler* of counsel), for respondent.

## OPINION OF THE COURT

DICKERSON, J.

## Introduction

On January 10, 2006, the defendant Town of Hempstead adopted section 302 (K) of article XXXI of the Building Zone Ordinance of the Town of Hempstead (hereinafter section 302 [K]). Section 302 (K) prohibited check-cashing establishments within the Town in any districts other than industrial and light manufacturing districts. Under an amortization provision in section 302 (K), preexisting check-cashing establishments located in districts where such establishments would be prohibited under section 302 (K) were required to terminate by amortization no later than five years after the effective date of section 302 (K).

The plaintiffs each operate check-cashing establishments in the Town's business district. Thus, upon the effective date of section 302 (K), the plaintiffs' establishments became nonconforming uses, and were required to terminate or relocate to industrial or light manufacturing districts in the Town within five years.

The plaintiffs commenced this action, inter alia, for a judgment declaring, among other things, that section 302 (K) is void

and of no effect. The plaintiffs claimed, among other things, that section 302 (K) was preempted by state law, that it was not a valid exercise of the Town's zoning power, and that it was unconstitutional.

After the Town joined issue, the plaintiffs moved for summary judgment on the complaint. The Town cross-moved for summary judgment, in effect, declaring that section 302 (K) is valid. The Supreme Court denied the plaintiffs' motion and granted the Town's cross motion.

We reverse the order insofar as appealed from. We conclude that section 302 (K) is invalid pursuant to the doctrine of conflict preemption. In light of this determination, we need not reach the parties' remaining contentions concerning the validity of section 302 (K).

## Factual and Procedural Background

Section 302 (K)

At issue on this appeal is section 302 (K), which was adopted by the Town on January 10, 2006.* Section 302 (K) provides,

> "[§ 302] K. Restrictions on check-cashing establishments
>
> "(1) Prohibition. In any use district except Y Industrial and LM Light Manufacturing Districts, check-cashing establishments are hereby expressly prohibited.
>
> "(2) Definition. A check-cashing establishment is defined as a place where checks are cashed and/or payday or other short-term type loans are offered, but where general banking services, including but not limited to the establishment of savings and checking accounts, provision for deposits and withdrawals therefrom, and payment of accrued interest, are not offered on a regular basis.
>
> "(3) Amortization. Any check-cashing establishment that is in violation of this subsection but is lawfully in existence in any unincorporated portion of the Town of Hempstead upon the effective date of this subsection shall become a legal nonconforming use

---

* Although the parties occasionally refer to section 302 (K) as appearing in article XXVIII of the Building Zone Ordinance of the Town of Hempstead, section 302 (K) appears in article XXXI thereof.

and shall terminate by amortization no later than five years immediately following the effective date of this subsection."

The Pleadings

The plaintiffs commenced this action by summons and complaint dated September 2, 2008.

In the first cause of action, the plaintiffs observed that section 302 (K) prohibited all check-cashing establishments in the Town from being located in any district other than industrial or light manufacturing districts. The plaintiffs operated check-cashing establishments in the Town's business district. The plaintiffs claimed that section 302 (K) conflicted with New York state law.

In the second cause of action, the plaintiffs asserted that the five-year amortization period contained in section 302 (K), inter alia, constituted an unlawful taking of their property without due process of law.

In the third cause of action, the plaintiffs asserted that section 302 (K) was not reasonably related to promoting the public health, safety, morals, or general welfare of the Town. The plaintiffs further claimed that the enactment of section 302 (K) was not a valid exercise of the Town's zoning power because, rather than dealing with the zoning of property, it impermissibly addressed the operation of the plaintiffs' businesses. The plaintiffs maintained that check cashing is not a use that can be regulated by zoning.

In the fourth cause of action, the plaintiffs asserted that section 302 (K) deprived them of their rights in property without due process of law.

In connection with the first four causes of action, the plaintiffs sought a judgment declaring section 302 (K) null and void.

In the fifth cause of action, the plaintiffs sought to permanently enjoin the Town from enforcing section 302 (K) against them.

The Town joined issue by serving an answer dated November 12, 2008. The Town largely denied the allegations in the complaint. The Town asserted seven affirmative defenses, including that the plaintiffs' claims were barred by the Municipal Home Rule Law.

The Plaintiffs' Motion for Summary Judgment

By notice of motion dated June 24, 2009, the plaintiffs moved for summary judgment on the complaint. In support of their

motion, the plaintiffs asserted that check-cashing establishments in New York State are completely regulated by the New York State Banking Department and the Superintendent of Banks (hereinafter the Superintendent). According to the plaintiffs, the Banking Law preempted section 302 (K) since the Banking Law sets forth a detailed and comprehensive regulatory scheme that evinced the State's intent to reserve the field of banking for state oversight and control. The plaintiffs contended that, because the field was preempted by the State, the Town was precluded from enacting legislation in the same area.

The plaintiffs further asserted that section 302 (K) conflicted with provisions of the Banking Law. Accordingly, the plaintiffs claimed that section 302 (K) was preempted based on conflict preemption as well as field preemption.

The plaintiffs also argued that section 302 (K) was an invalid exercise of the Town's zoning power. They maintained that section 302 (K) was enacted with an exclusionary and discriminatory purpose, and that it had an exclusionary effect. The plaintiffs claimed that the Town sought to " 'zone out' the check cashing establishment[s] . . . from certain districts simply because it deems such establishments undesirable for reasons completely unrelated to land use. This is not a permissible and valid use of the Town's zoning power."

The plaintiffs further asserted that section 302 (K) was arbitrary and capricious, since it was not enacted to further a legitimate government purpose, and because it was not reasonably related to the end the Town sought to achieve. The plaintiffs argued that the Town ignored the fact that their check-cashing establishments were lawful, licensed, and state-regulated businesses. The plaintiffs claimed that the Town's alleged comparison of check-cashing establishments to " 'seedy' " operations " 'akin to pawnshops and strip clubs' " was irresponsible and demonstrated that the Town acted in an arbitrary and capricious manner "because it perceived check cashing establishments as undesirable—clearly demonstrating an ignorant bias towards said establishments and the communities they serve." The plaintiffs asserted that section 302 (K) was "completely unrelated to the 'evils' imagined by the Town."

The plaintiffs also asserted that section 302 (K) was unconstitutional. They claimed that the passage of section 302 (K) violated their due process rights because they were not afforded sufficient notice or an opportunity to be heard. Although the

plaintiffs acknowledged that a public hearing was held prior to the enactment of section 302 (K), they argued that they did not receive adequate notice of the specific risk they faced in having their businesses terminated.

The plaintiffs argued that section 302 (K) violated the Equal Protection Clause of the United States Constitution because it had a discriminatory and disparate impact. They further argued that section 302 (K) effected an unconstitutional taking of their property, as they will be forced to relocate or close their operations within the five-year amortization period.

In support of their motion for summary judgment, the plaintiffs submitted, among other things, an "Inter-Departmental Memo" apparently drafted by Charles S. Kovit, Senior Deputy Town Attorney, dated December 13, 2005, written to "File." The memorandum was not signed or affirmed.

The subject of the memo was "Public Policy behind Check Cashing Ordinance." The memo stated that section 302 (K) represented "sound public policy." Kovit stated, in part,

> "Essentially, it serves the interest of encouraging young people and those of lower incomes to establish savings and checking accounts, do their banking at sound and reputable banking institutions, and develop credit ratings. It also eliminates predatory and exploitative finance enterprises from commercial areas, which is beneficial because these enterprises tend to keep a neighborhood down.

> "Studies have found that a substantial portion of young and lower income people don't have a bank account. Check-cashing and Payday Loan establishments help to perpetuate this condition, by making it convenient for them to remain in the cash-only economy. This is bad for society as a whole because it discourages savings and the development of credit ratings that will help young and lower income people later in life."

Kovit also observed that "orthodox studies have found that check-cashing establishments actually exploit the poor and African Americans." According to Kovit, the high fees charged by check-cashing establishments constituted a form of racial discrimination. Kovit continued, "Check cashing businesses . . . tend to cater disproportionately to minorities and pop up predominately in minority neighborhoods, keeping its patrons

in the cash economy, to their detriment." Kovit concluded that "[t]he proposed . . . ordinance . . . would seek to end this pernicious exploitation and encourage banks and other financial institutions to become more conveniently located for everyone, including the poor and minorities." He further concluded that enactment of section 302 (K) would remove "a seedy type of operation, akin to pawnshops and strip clubs, from the commercial areas of the Town."

The Town's Cross Motion for Summary Judgment

By notice of cross motion dated November 30, 2009, the Town cross-moved for summary judgment, in effect, declaring that section 302 (K) is valid.

In opposition to the plaintiffs' motion, and in support of its cross motion, the Town asserted, inter alia, that, in the absence of substantial evidence to the contrary, the Supreme Court was required to assume, as a matter of law, that the Town acted rationally in enacting section 302 (K). The Town asserted that the plaintiffs had no vested constitutionally protected property interest in the prior zoning classification of their properties and, accordingly, there could be no actionable claim of a de facto taking. Moreover, the Town asserted that the plaintiffs were not denied due process.

In opposition to the plaintiffs' motion and in support of its cross motion, the Town submitted, among other things, a notice of a public hearing, dated November 29, 2005, which stated that a hearing would be held on December 13, 2005, to consider the proposed section 302 (K), entitled "Restrictions on check-cashing establishments." The Town also submitted an affirmation of publication sworn to on December 2, 2005, in connection with the notice of hearing.

The Town also submitted a memorandum of law in support of its cross motion, arguing, among other things, that the Superintendent of Banks of the State of New York, as a defendant, in *American Broadcasting Cos. v Siebert* (110 Misc 2d 744 [1981]), provided a rational basis for the Town's concern that check-cashing businesses represented a potential threat to public welfare. In *American Broadcasting*, the then-Superintendent conceded, among other things, that "the risk of robberies inherently exists in the check-cashing business" (*id.* at 747).

The Order Appealed From

In an order entered April 16, 2010, the Supreme Court, Nassau County, inter alia, denied the plaintiffs' motion for summary judgment on the complaint and granted the Town's cross

motion for summary judgment, in effect, declaring that section 302 (K) was valid in all respects. The court concluded, in effect, that the relevant body of state law did not demonstrate that the Legislature intended to occupy the field of regulating check-cashing establishments. The court concluded that the plaintiffs failed to demonstrate that the doctrines of field preemption or conflict preemption prevented the Town from enacting section 302 (K). Additionally, the court concluded that the plaintiffs failed to rebut the presumption of validity which applied to section 302 (K). Finally, the court concluded that the plaintiffs failed to demonstrate that section 302 (K) violated the Equal Protection Clause of the United States Constitution.

## Discussion

### Home Rule and Preemption

New York's constitutional home rule provision (*see* NY Const, art IX, § 2 [c]) "confers broad police powers upon local governments relating to the welfare of its citizens" (*Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 96 [1987]; *see* Municipal Home Rule Law § 10; *DJL Rest. Corp. v City of New York*, 96 NY2d 91, 93 [2001]; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d 500, 505 [1991]; *Matter of Chwick v Mulvey*, 81 AD3d 161, 167 [2010]; *Matter of Stoffer v Department of Pub. Safety of the Town of Huntington*, 77 AD3d 305, 315 [2010]; *Dougal v County of Suffolk*, 102 AD2d 531, 532 [1984], *affd* 65 NY2d 668 [1985]). "Yet while local governments do possess broad authority to enact legislation that promotes the welfare of their citizens, it is well established that they cannot adopt laws that are inconsistent with the Constitution or with any general law of the State" (*Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d at 505; *see* NY Const, art IX, § 2 [c]; Municipal Home Rule Law § 10 [1] [i], [ii]; *see also Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 376 [1989]). Thus, the power of local governments to enact laws is subject to the fundamental limitation of the preemption doctrine (*see DJL Rest. Corp. v City of New York*, 96 NY2d at 94; *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d at 505; *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377; *Matter of Chwick v Mulvey*, 81 AD3d at 167; *Matter of Stoffer v Department of Pub. Safety of the Town of Huntington*, 77 AD3d at 315; *Dougal v County of Suffolk*, 102 AD2d at 532).

"Broadly speaking, State preemption occurs in one of two ways—first, when a local government adopts a law that directly

conflicts with a State statute and second, when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility" (*DJL Rest. Corp. v City of New York*, 96 NY2d at 95 [citations omitted]; *see Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377; *New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987], *affd* 487 US 1 [1988]; *Matter of Chwick v Mulvey*, 81 AD3d at 167; *Dougal v County of Suffolk*, 102 AD2d at 532).

"Under the doctrine of conflict preemption, a local law is preempted by a state law when a 'right or benefit is expressly given . . . by . . . State law which has then been curtailed or taken away by the local law' " (*Matter of Chwick v Mulvey*, 81 AD3d at 167-168, quoting *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *see New York State Club Assn. v City of New York*, 69 NY2d at 217). "Put differently, conflict preemption occurs when a local law prohibits what a state law explicitly allows, or when a state law prohibits what a local law explicitly allows" (*Matter of Chwick v Mulvey*, 81 AD3d at 168; *see Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d 761, 762-763 [1989]). "In determining the applicability of conflict preemption, we examine not only the language of the local ordinance and the state statute, but also whether the direct consequences of a local ordinance 'render illegal what is specifically allowed by State law' " (*Matter of Chwick v Mulvey*, 81 AD3d at 168 [some internal quotation marks omitted], quoting *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d at 764). "The crux of conflict preemption is whether there is 'a head-on collision between the . . . ordinance as it is applied' and a state statute" (*Matter of Chwick v Mulvey*, 81 AD3d at 168, quoting *Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d at 764).

Under the doctrine of field preemption, " 'a local law regulating the same subject matter [as a State law] is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute' " (*Matter of Chwick v Mulvey*, 81 AD3d at 172, quoting *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377; *see Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 401 [2003]; *DJL Rest. Corp. v City of New York*, 96 NY2d at 95; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97-98; *Dougal v County of Suffolk*, 102 AD2d at 532-533). " 'Such [local] laws, were they permitted to operate in a

field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns' " (*Matter of Chwick v Mulvey*, 81 AD3d at 169, quoting *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *see Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d at 377). "Field preemption applies under any of three different scenarios" (*Matter of Chwick v Mulvey*, 81 AD3d at 169; *see Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 105 [1983]). "First, an express statement in the state statute explicitly avers that it preempts all local laws on the same subject matter" (*Matter of Chwick v Mulvey*, 81 AD3d at 169; *see DJL Rest. Corp. v City of New York*, 96 NY2d at 95). "Second, a declaration of state policy evinces the intent of the Legislature to preempt local laws on the same subject matter" (*Matter of Chwick v Mulvey*, 81 AD3d at 169; *see Robin v Incorporated Vil. of Hempstead*, 30 NY2d 347, 350 [1972]). "And third, the Legislature's enactment of a comprehensive and detailed regulatory scheme in an area in controversy is deemed to demonstrate an intent to preempt local laws" (*Matter of Chwick v Mulvey*, 81 AD3d at 169-170; *see New York State Club Assn. v City of New York*, 69 NY2d at 217).

Banking Law Article 9-A

To determine whether section 302 (K) is preempted by state law, we examine certain provisions of the Banking Law, specifically Banking Law article 9-A, and related materials.

Banking Law article 9-A pertains to "Licensed Cashers of Checks." A note accompanying article 9-A, setting forth the legislative findings, states, in relevant part,

> "The legislature hereby finds and declares that the purpose and objective of article 9-A of the banking law, and specifically section 367 of such article, is to provide for the regulation of the business of cashing checks by the superintendent of banks whether the cashing of checks, drafts and money orders, as prescribed by article 9-A and regulations of such superintendent, is performed for customers that are natural persons or any business, corporation, partnership, limited liability company or partnership, association or sole proprietorship, or any other entity" (L 2004, ch 432, § 1, reprinted in McKinney's Cons Laws of N.Y., Book 4, Banking Law art 9-A, Historical and Statutory Notes, at 417 [2008 ed]).

Section 367 of the Banking Law pertains to, inter alia, license requirements for cashers of checks. Under that section, "No person, partnership, association or corporation shall engage in the business of cashing checks, drafts or money orders for a consideration without first obtaining a license from the superintendent" (Banking Law § 367 [1]). To obtain a license, a person or entity must apply, in writing, under oath, "in the form prescribed by the superintendent" (Banking Law § 367 [2]). The applicant must also pay to the Superintendent a fee "for investigating the application" (Banking Law § 367 [3]).

Banking Law § 369 addresses conditions precedent to the issuance of a license, the issuance and filing of a license, and posting the license. It provides, insofar as relevant to the issue presented here,

> "if the superintendent shall find that the granting of such application will promote the convenience and advantage of the area in which such business is to be conducted, and if the superintendent shall find that the applicant has available for the operation of such business for each location and for each mobile unit specified in the application liquid assets of at least ten thousand dollars, the superintendent shall thereupon execute a license in duplicate to permit the cashing of checks, drafts and money orders in accordance with the provisions of this article at the location or in the area specified in such application. In finding whether the application will promote the convenience and advantage to the public, the superintendent shall determine whether there is a community need for a new licensee in the proposed area to be served. No license shall be issued to an applicant for a license, at a location to be licensed which is closer than one thousand five hundred eighty-four feet (three-tenths of a mile) from an existing licensee, except with the written consent of such existing licensee or pursuant to subdivision three of section three hundred seventy of this article, subject to any restriction or condition as the superintendent may promulgate by regulation . . . The primary business of the licensee, at the location to be licensed, shall be financial services" (Banking Law § 369 [1]).

In setting forth the legislative intent in connection with the 1994 amendment of Banking Law § 369 (1), which added a

substantial portion of the foregoing language to that subdivision, the Legislature stated,

> "The legislature hereby finds and declares that check cashers provide important and vital services to New York citizens; that the business of check cashers shall be supervised and regulated through the banking department in such a manner as to maintain consumer confidence in such business and protect the public interest; that the licensing of check cashers shall be determined in accordance with the needs of the communities they are to serve; and that it is in the public interest to promote the stability of the check cashing business for the purpose of meeting the needs of the communities that are served by check cashers" (L 1994, ch 546, § 1).

The Superintendent has promulgated regulations concerning licensed cashers of checks (*see* 3 NYCRR part 400), including specific regulations pertaining to the issuance of a license or the change of control of a license (*see* 3 NYCRR 400.1). Anyone seeking to obtain a license to cash checks, or to acquire control of a licensed check casher, must submit, among other things, a

> "business plan containing such information as shall permit the superintendent to make a finding that the granting of the license will promote the convenience and advantage of the area in which the business is to be conducted including a determination that there is a community need for a new licensee in the proposed area to be served" (3 NYCRR 400.1 [c] [7]).

The business plan must contain the following information:

> "(i) description of primary market area (*e.g.*, identification of blocks and other landmarks including the locations of banking institutions and other licensed check cashers operating in the service area surrounding the proposed location);
>
> "(ii) description of projected customer base;
>
> "(iii) proposed days and hours of operations;
>
> "(iv) types of services proposed to be offered including special services such as fluency in languages which are predominant in the area of licensed location(s);
>
> "(v) detailed description of demographics of the area

including population density which information should be derived from official government records and other published sources;

"(vi) description of any proposed economic development of area; and

"(vii) specific marketing targets, if any" (*id.*).

Thus, as the clear language of Banking Law § 369 (1) demonstrates, the Legislature has vested the Superintendent with the duty to determine whether each applicant for a check-cashing license proposes to perform that function in an appropriate location, whether there is a community need for a new licensee in that location, and whether the granting of such an application will be advantageous to the public. Furthermore, in amending Banking Law § 369 (1) in 1994, the Legislature specified its intention that "the licensing of check cashers shall be determined in accordance with the needs of the communities they are to serve" (L 1994, ch 546, § 1). Pursuant to the Banking Law, and to the regulations promulgated by the Superintendent, where a license is granted, the successful applicant has demonstrated that it is appropriately located based upon community needs, economic development plans, and demographic patterns (*see* Banking Law § 369 [1]; 3 NYCRR 400.1 [c] [7]).

## Analysis

Here, section 302 (K) adopted by the Town prohibits check-cashing establishments from being located anywhere in the Town, with the exception of industrial and light manufacturing districts. In adopting section 302 (K), the Town has necessarily determined that, in its estimation, the Town's business district is not an appropriate location for check-cashing establishments, and that such establishments are only appropriate in the Town's industrial and light manufacturing districts.

However, through the enactment and amendment of Banking Law § 369, the Legislature has specifically delegated to the Superintendent the task of determining whether particular locations are appropriate for check-cashing establishments. The plaintiff check-cashing establishments are located within the Town's business district, and each establishment received a license to operate at its location from the Superintendent. The Superintendent's determination to grant these licenses, pursuant to the statutory scheme, involved a determination that "there is a community need for a new licensee in the proposed

area to be served," and that granting the applications would "promote the convenience and advantage to the public" (Banking Law § 369 [1]). Accordingly, we conclude that the Town's attempt to control the determination of the appropriate locations of these establishments by enactment of section 302 (K) is in conflict with existing state law.

It is true that " 'separate levels of regulatory oversight can coexist' " (*DJL Rest. Corp. v City of New York*, 96 NY2d at 97, quoting *Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d at 507). "State statutes do not necessarily preempt local laws having only 'tangential' impact on the State's interests" (*DJL Rest. Corp. v City of New York*, 96 NY2d at 97; *see Incorporated Vil. of Nyack v Daytop Vil.*, 78 NY2d at 506). However, here, the facts of this case demonstrate that section 302 (K) has more than a tangential impact on the relevant Banking Law provisions.

Section 302 (K) purports to accomplish the same function delegated by the Legislature to the Superintendent by making a determination as to the appropriate location for check-cashing establishments. By permitting such establishments to be located only within the Town's industrial and light manufacturing districts, section 302 (K) purports to divest the Superintendent of the authority to "determine whether there is a community need for a new licensee in the proposed area to be served" (Banking Law § 369 [1]). As a direct consequence of section 302 (K), existing check-cashing establishments at locations in the Town's business district, each of which was necessarily determined by the Superintendent to be appropriately located to serve a community need, will now find themselves in violation of a provision of the Town's Building Zone Ordinance. Because this violation does not exist under state law, and because the Legislature has vested the Superintendent with the authority to determine appropriate locations for check-cashing establishments, section 302 (K) is preempted by state law (*see generally Matter of Lansdown Entertainment Corp. v New York City Dept. of Consumer Affairs*, 74 NY2d at 764-765; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d at 97; *New York State Club Assn. v City of New York*, 69 NY2d at 217; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d at 108; *Matter of Chwick v Mulvey*, 81 AD3d at 167-168). Under the circumstances presented here, "a 'right or benefit [which was] expressly given . . . by . . . State law . . . has . . . been curtailed or taken away by' " section 302 (K) (*Matter of Chwick v Mulvey*, 81 AD3d at 167-168, quoting *Jancyn Mfg. Corp. v*

*County of Suffolk*, 71 NY2d at 97; *see New York State Club Assn. v City of New York*, 69 NY2d at 217). Accordingly, section 302 (K) cannot stand, as it is preempted by state law.

In light of our determination that section 302 (K) is invalid based on the doctrine of conflict preemption, we need not reach the parties' remaining contentions concerning the validity of section 302 (K).

Finally, since this is, in part, a declaratory judgment action, we remit the matter to the Supreme Court, Nassau County, for the entry of a judgment, inter alia, declaring that section 302 (K) is void and of no effect (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

Conclusion

We conclude that, under the doctrine of conflict preemption, section 302 (K) is preempted by state law. Accordingly, the Supreme Court should have granted the plaintiffs' motion for summary judgment on the complaint, and denied the Town's cross motion. Accordingly, the order is reversed insofar as appealed from, on the law, the plaintiffs' motion for summary judgment on the complaint is granted, the defendant's cross motion for summary judgment, in effect, declaring that section 302 (K) of article XXXI of the Building Zone Ordinance of the Town of Hempstead is valid is denied, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment, inter alia, declaring that section 302 (K) of article XXXI of the Building Zone Ordinance of the Town of Hempstead is void and of no effect.

SKELOS, J.P., HALL and SGROI, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the plaintiffs' motion for summary judgment on the complaint is granted, the defendant's cross motion for summary judgment, in effect, declaring that section 302 (K) of article XXXI of the Building Zone Ordinance of the Town of Hempstead is valid is denied, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment, inter alia, declaring that section 302 (K) of article XXXI of the Building Zone Ordinance of the Town of Hempstead is void and of no effect.