*181 OPINION OF THE COURT
Lawrence H. Ecker, J.
It is hereby, ordered that the motion is granted, and it is further, ordered, adjudged and decreed that plaintiff is granted judgment declaring Local Law No. 6 (2008) of the Village of Woodbury invalid on the ground of state preemption, and that the law is null and void.
Introduction
Plaintiff alleges it is a private water works company located in defendant Village of Woodbury which seeks to sell water to a development in an adjacent town. Defendant passed a local law which prohibits the removal of groundwater, either directly or after storage, for use outside of the village. Penalties include fines and imprisonment. Plaintiff commenced this action to have the law declared invalid as preempted by the state law. Plaintiff moves for summary judgment. The motion is granted.
Factual and Procedural Background
In April 1999, plaintiff Woodbury Heights Estates Water Co., Inc. was incorporated under section 3 of the Transportation Corporations Law for the stated purpose of supplying water to a subdivision known as Woodbury Heights Estates (plaintiffs appendix at 22).
In August 2008, the Village of Woodbury enacted Local Law No. 6 (plaintiffs appendix at 29-32). Pursuant to section 246-1 of the Code of the Village of Woodbury, the Village Board found that “the unregulated and uncontrolled relocation, removal, and exportation of certain natural materials may degrade the environment of the Village to a point that is detrimental to the public safety, health and general welfare” and that regulation of the same was necessary to protect against soil erosion and instability, and to preserve natural resources belonging to the village and its residents (opposition papers, exhibit A). Pursuant to section 246-11: “The removal of groundwater, either directly or after storage, for use outside of the incorporated Village of Woodbury is expressly prohibited, except by intermunicipal agreement with the Village Board of Trustees.” Pursuant to section 246-12, a violation of the section was punishable as a misdemeanor offense and/or by fines.
In October 2008, the Village of Woodbury commenced an unrelated action to set aside a sale of property by Zigmond Brach *182 (president, owner, and sole stockholder of plaintiff) to the Village of Kiryas Joel (plaintiffs appendix at 18-20). The Village of Woodbury alleged that Brach, without obtaining subdivision approval, had sold property within its borders to the Village of Kiryas Joel for the purpose of building a water tower thereon to provide its citizens with potable water. In dismissing the action, the Supreme Court, Orange County (Slobod, J.), noted that the Village of Woodbury had entered into a stipulation in which it had, in effect, waived the lack of subdivision approval. The court held that the Village of Woodbury could not indirectly affect Kiryas Joel’s property rights by seeking an order compelling Brach to rescind the deed.
In July 2010, the Town of Monroe entered into an agreement with plaintiff to purchase water, on terms to be negotiated, to supply a property known as the Forest Edge subdivision in the Town of Monroe. It was agreed that the water was to be used solely for residential and not commercial purposes (plaintiffs appendix at 27).
By certificate of extension dated January 4, 2011, filed pursuant to section 46 of the Transportation Corporations Law, plaintiff noted that it had entered into a contract to supply water to the Town of Monroe (plaintiffs appendix at 24-25).
In February 2011, plaintiff commenced the action at bar. Plaintiff seeks (1) a declaration that Local Law No. 6 is illegal and void, and (2) an award of damages pursuant to 42 USC § 1983 for a taking without just compensation.* Plaintiff alleges that the regulation of water by the Village of Woodbury was preempted by state law and was outside the powers of local government. (Complaint 1HÍ 21-28; plaintiffs appendix at 6-7.)
As factual background, plaintiff alleges it owns two water supply wells and a storage tank located on three separate but adjacent parcels of property in the Village of Woodbury. Further, it owns distribution water mains and pipes, and various easements among a 67-lot subdivision named Woodbury Heights Estates. Plaintiff alleges the plans and specification for the system were reviewed and approved by the New York State Department of Environmental Conservation (hereinafter DEC) pursuant to article 15 of the Environmental Conservation Law. In 2010, it entered into the agreement to supply the Forest Edge subdivision in the Town of Monroe. On January 7, 2011, *183 plaintiff filed a certificate of extension of territory pursuant to section 46 of the Transportation Corporations Law to include this area (plaintiffs appendix at 26).
In August 2008, the Village of Woodbury enacted Local Law No. 6, which prohibits the removal of groundwater for use outside of the village except pursuant to an inter-municipal agreement. Plaintiff alleges the protection of water, including groundwater, is a matter of state concern, and that Local Law No. 6 is preempted.
The Motion at Bar
Plaintiff moves for summary judgment on its remaining cause of action for declaratory relief.
In support of its motion, plaintiff submits the affirmation of Zigmond Brach, its president, owner and sole shareholder. Brach avers that he acquired plaintiff in 2007 as an investment and as a potential source of water for a 56-unit subdivision he was planning to build in the Town of Monroe (i.e., the Forest Edge subdivision). He notes that 90% of the subdivision is surrounded by Kiryas Joel, and that the proposal for the same was then before the Town of Monroe Planning Board. Brach asserts that the Village of Woodbury was formed on August 8, 2008, and that its main purpose was to prevent the spread of the Hasidic community in the area. Brach avers that, after he purchased plaintiff, he met with the village mayor, Stephanie BereanWeeks, and influential planning board member, Sheila Conroy, and disclosed his plans concerning the Forest Edge subdivision. He advised them that allowing the expansion would reduce the cost of water to village residents, and offered to give plaintiff to the village, subject to supplying water to the Forest Edge subdivision, to assure that no water flowed to Kiryas Joel. When he left the meeting, he believed Berean-Weeks and Conroy were amenable to his offer. However, the village passed Local Law No. 6, and commenced the action (supra at 181), in which it attempted (unsuccessfully) to void a sale of land he had made to Kiryas Joel. Brach argues that the real purpose of Local Law No. 6 is to prevent his development of the Forest Edge subdivision and, consequently, to stop the expansion of the Hasidic community in the area. Regardless, he asserts, the law is preempted by state law and should be declared null and void.
In opposition, Village of Woodbury submits an affirmation from counsel, Christopher J. Walsh, Esq. Walsh notes that, among the disclosure demands in the case, Village of Woodbury *184 sought the plans and drawings plaintiff submitted to the DEC to obtain a permit to operate a water works corporation. To date, those had not been supplied. Further, he asserts, although plaintiff provided its certificate of incorporation, which references a consent of the Village of Woodbury to the same, it did not provide a copy of the alleged consent. In addition, although such a consent is required by section 41 of the Transportation Corporations Law, it has not otherwise been provided during this motion practice. Walsh asserts that the Town of Monroe had still not approved the subdivision for the Forest Edge subdivision, and that Brach had not provided any insight into when that might occur.
The village contends that Local Law No. 6 was duly enacted after the required hearings, and that Brach offered no evidence in support of his contention that the law was enacted specifically to affect him or to prevent the spread of the Hasidic community. Further, it asserts, Local Law No. 6 is not preempted by state law because the State has not evinced an intent to occupy the entire field of water by enacting article 15 of the Environmental Conservation Law. Otherwise, Walsh argues, it is completely legitimate for a village to regulate its water supplies in light of its own needs, including fire protection. In sum, he asserts, the law should be upheld.
In further opposition to the motion, Village of Woodbury submits the affidavit of Neil Crouse, a trustee since 2006. Crouse avers that he and other duly elected village officials, with input from the village counsel and engineer, worked diligently toward enacting a code for the Village of Woodbury, as required by law. This included reviewing the codes of other towns, including the Town of Woodbury, which had provisions for the protection of natural resources, water and soil. In enacting the provision at issue, he asserts, officials recognized that the village’s sole water source was groundwater, which needed to be accessed by drilled wells, and that any damage to, or extinguishment of, that resource would result in no water for the village. Thereafter, hearings were duly held and Local Law No. 6 was enacted.
Analysis
The “home rule provision” of the State Constitution (NY Const, art IX, § 2) confers broad police power upon local government relating to the welfare of its citizens, and local governments are authorized to legislate in enumerated areas of local *185 concern. However, they cannot adopt laws that are inconsistent with the Constitution or with any general law of the State, and this local power is subject to a fundamental limitation by the preemption doctrine, which embodies the untrammeled primacy of the Legislature to act with respect to matters of state concern. (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395 [2003]; Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, 91 AD3d 126 [2d Dept 2011]; Matter of Chwick v Mulvey, 81 AD3d 161 [2d Dept 2010].) Broadly speaking, state preemption occurs in one of two ways — first, when a local government adopts a law that directly conflicts with a state statute (“conflict preemption”), and second, when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility (“field preemption”). (Willow Woods Manufactured Homeowner’s Assn., Inc. v R & R Mobile Home Park, Inc., 81 AD3d 930 [2d Dept 2011].)
The doctrine of conflict preemption provides that a local law is preempted by a state law when a right or benefit expressly given by state law is curtailed or taken away by the local law. (Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, supra.)
The doctrine of field preemption is implicated when the State has acted upon a subject, and in so acting has evidenced a desire that its regulations should preempt the possibility of varying local regulations. (Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, supra; Matter of Chwick v Mulvey, supra.) Pursuant to the doctrine, a local law regulating the same subject matter as a state law is deemed inconsistent with the State’s transcendent interest, whether or not the terms of the local law actually conflict with a statewide statute. Such local laws, were they permitted to operate in a field preempted by state law, would tend to inhibit the operation of the State’s general law and thereby thwart the operation of the State’s overriding policy concerns.
Field preemption applies under any of three different scenarios. First, an express statement in the state statute explicitly avers that it preempts all local laws on the same subject matter. Second, a declaration of state policy evinces the intent of the Legislature to preempt local laws on the same subject matter. And third, the Legislature’s enactment of a comprehensive and detailed regulatory scheme in an area in controversy is deemed to demonstrate an intent to preempt local laws. Evidence of the intent to preempt is provided by the *186 complete and detailed nature of the state scheme. Comprehensiveness and detail are important in determining the existence of an intent to preempt. When the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the State. (Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, supra; Matter of Chwick v Mulvey, supra.)
Here, Local Law No. 6 is preempted by state law, particularly by article 15 of the Environmental Conservation Law.
Plaintiff alleges that it is a duly formed water works corporation, which is defined as a “corporation organized to supply water by mains or pipes to any of the cities, towns or villages in this state, and the inhabitants thereof.” (Transportation Corporations Law § 40.) A water works corporation is formed under the Transportation Corporations Law by delivering to the Department of State for filing an appropriate certificate of incorporation. (Transportation Corporations Law § 3 [b] [3]; Business Corporation Law §§ 401-409.) The certificate must state the cities, towns and villages to be supplied with water, and that the consent of the authorities of such cities, towns and villages required by this chapter has been obtained and annexed thereto. (Transportation Corporations Law § 3 [b] [3].)
Once duly formed, a water works corporation falls under the jurisdiction of both the Public Service Commission and the Department of Environmental Conservation. (Public Service Law § 5; ECL art 15.) Article 15 of the Environmental Conservation Law grants the DEC broad authority under a detailed and comprehensive scheme for the protection of the water resources of the State of New York. The legislative findings of the article include, inter alia, that the “sovereign power to regulate and control the water resources of this state ever since its establishment has been and now is vested exclusively in the state of New York, except to the extent of any delegation of power to the United States”; that adequate and suitable water for all uses “is essential to the health, safety and welfare of the people and economic growth and prosperity of the state”; that the DEC is to continue the work of undertaking “comprehensive planning for the protection, conservation and development of the water resources of the state”; and that it is “in the best interest of the state that provision be made for the regulation and supervision of activities that deplete, defile, damage or otherwise adversely affect the waters of the state and land resources associated therewith.” (ECL 15-0103 [1], [3], [12], [13]; *187 see also ECL 15-0107 [4] [broadly defining “waters” to include, inter alia, wells].)
Under article 15, a water works company, prior to providing potable water, or extending the territory in which one is providing water, must obtain a permit from the DEC. (ECL 15-1503.) The application must be on the prescribed forms and
“shall contain all information requested by the department relative to the withdrawal, use and discharge of water, including:
“a. with respect to a public water supply system, proof of adequate authorization for the proposed project;
“b. such exhibits as may be necessary clearly to indicate the scope of the proposed project;
“c. a map of any lands to be acquired;
“d. project plans;
“e. a statement of the need for and the reasons why the proposed source or sources of supply were selected among the alternative sources which are or may become available and the adequacy of the supply selected; and
“f. a description of the applicant’s proposed near term and long range water conservation program that incorporates environmentally sound and economically feasible water conservation measures, including implementation and enforcement procedures, effectiveness to date and any planned modifications for the future.” (ECL 15-1503 [1]; see 6 NYCRR 601.1-608.1.)
In determining whether to grant or deny a permit, or to grant a permit with conditions, the DEC “shall determine whether:
“a. the proposed water withdrawal takes proper consideration of other sources of supply that are or may become available;
“b. the quantity of supply will be adequate for the proposed use;
“c. the project is just and equitable to all affected municipalities and their inhabitants with regard to their present and future needs for sources of potable water supply;
“d. the need for all or part of the proposed water withdrawal cannot be reasonably avoided through *188 the efficient use and conservation of existing water supplies;
“e. the proposed water withdrawal is limited to quantities that are considered reasonable for the purposes for which the water use is proposed;
“f. the proposed water withdrawal will be implemented in a manner to ensure it will result in no significant individual or cumulative adverse impacts on the quantity or quality of the water source and water dependent natural resources;
“g. the proposed water withdrawal will be implemented in a manner that incorporates environmentally sound and economically feasible water conservation measures; and
“h. the proposed water withdrawal will be implemented in a manner that is consistent with applicable municipal, state and federal laws as well as regional interstate and international agreements.” (ECL 15-1503 [2] [emphasis added].)
Pursuant to the relevant regulations, the DEC must also determine, inter alia, that the proposed project is justified by the public necessity; that all work and construction connected with the project will be proper and safe; and that there will be proper protection and treatment of the water supply and watershed. (6 NYCRR 601.6.)
As is demonstrated by the discussion supra, the State of New York has expressed an overriding state interest in the protection of water resources, and has enacted a detailed and comprehensive scheme concerning the provision of potable water to municipalities and their inhabitants. Relevant to the case at bar, the scheme expressly contemplates a situation where potable water is supplied to more than one municipality, and requires the DEC to determine whether a project is “just and equitable to all affected municipalities and their inhabitants with regard to their present and future needs for sources of potable water supply.” (ECL 15-1503 [2] [e].) Thus, the Legislature has demonstrated its intent to preempt the field, and Local Law No. 6 is preempted, regardless of whether it actually conflicts with the state law. (Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, supra; Matter of Chwick v Mulvey, supra.)
In reaching this conclusion, the court need not, and did not, determine whether plaintiff is a duly formed water works *189 corporation, or whether it duly obtained an extension from the Town of Monroe to supply water to the Forest Edge subdivision, issues that appear to be raised by the Village of Woodbury in its opposition papers. Thus, the Village of Woodbury is not barred by this order from seeking any appropriate relief concerning the same, should it be so advised. (See e.g. Matter of City of Schenectady v Flacke, 100 AD2d 349 [3d Dept 1984]; Town of Hempstead v Flacke, 82 AD2d 183 [2d Dept 1981]; Swan Lake Water Corp. v Suffolk County Water Auth., 25 AD2d 542 [2d Dept 1966], affd 20 NY2d 81 [1967].)

 Plaintiff voluntarily discontinued its section 1983 claim (opposition papers, exhibit C).