People v Prasarn (2019 NY Slip Op 52208(U))

[*1]

People v Prasarn

2019 NY Slip Op 52208(U)

Decided on September 30, 2019

City Court Of Ithaca, Tompkins County

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2019
City Court of Ithaca, Tompkins County

People of the State of New York, Plaintiff,

against
Paul Prasarn, Defendant.

Index No. CR-4600-18

Attorney for Defendant: Robert C. Kilmer, Esq.; Attorney for City of Ithaca (People): Robert A. Sarachan, Esq., Assistant City of Ithaca Attorney

Scott A. Miller, J.

Defendant moves for dismissal of the accusatory instrument charging Defendant with a violation of Ithaca City Code, §219-2(A)(1), which prohibits hunting within city limits, on the basis that the Local Law is preempted by New York State Law. Ithaca City Code §219-2(A)(1) provides:
No person shall hunt, pursue or kill with a gun or firearm any wild animals, fowl or birds or engage in hunting within the city.
In short, §219-2(A)(1) completely bans all manner of hunting anywhere within the City of Ithaca.
The People allege that Defendant committed the offense of "Hunting Within City Limits in violation of section 219-2, subdivision A(1) of the New York State, City of Ithaca Local Law. A violation level offense." The Accusatory Instrument, based on an Ithaca Police Officer Cosgrove's direct knowledge, affirms:
On or about the 21st of November 2018, at about 8:35 am, While located along the southern edge of Cayuga Lake, north of the Hangar Theater at 801 Taughannock Boulevard, Ithaca, NY 14850, a person is guilty of hunting within the city limits by: No person shall hunt, pursue or kill with a gun or firearm any wild animals, fowl or birds or engage in hunting within the city. To Wit: At the aforesaid date, time and location the defendant did: engage in hunting waterfowl at the location listed above, which falls within the City of Ithaca, NY's boundaries.
The DEC Amicus letter states that Mr. Prasarn was in a boat on Cayuga Lake within the City's boundaries (January 18, 2019 Letter from Joseph Sluzar, Region 7 Attorney), and none of the parties has disputed this. The City Attorney states, also without contradiction, that Mr. Prasarn was duck hunting with a shotgun within the boundaries of the City (People's Sur-reply May 13, [*2]2019). It is unclear if Mr. Prasarn actually discharged his shotgun at any time.
Preemption Doctrine:
Preemption analysis is mainly a question of legislative intent, whether the legislative body is the US Congress or the New York state Legislature (State ex rel Grupp v. DHL Exp(USA), Inc., 19 NY3d 278 [2012]; Garcia v. New York City Dept of Health and Mental Hygiene, 31 NY3d [2018]). A notable treatise on municipal corporations enumerates three types of preemption:
Between the state and a municipality, as between the state and federal laws, there are three generally recognized types of preemption: (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments.
McQuillin Mun. Corp. § 15:19 Conformity to state and federal laws—Types and tests for preemption, 5 (3d ed.) Emphasis added.
Defendant argues both conflict and field preemption, but not express preemption. Indeed, the New York State Constitution and the ECL enabling statutes do not contain express preemption or superseder clauses. NY Const, art XIV; NY ECL 1-0101 et seq. 

As part of home rule, the City has the power to "maintain order, enforce the laws, ... preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto," including "waterfront and waterways and adjacent property" (NY General City Law §20, see NY Mun Home Rule Law §10 ). In addition to the "powers granted in the statute of local governments or any other law, every local government [has] the power to adopt and amend local law" as long as it is not "inconsistent with the provisions of this constitution or any general law relating" to its property, affairs or government and a list of enumerated subjects, including "the government protection, order, conduct, safety, health and well-being of persons or property therein"(NY Const. Art.IX§2). Neither environmental conservation nor hunting is one of the enumerated subjects, and, therefore preemption analysis is required. 
The Court of Appeals has acknowledged the power of local governments to protect the welfare of its residents under home rule as long as the local law 1) does not conflict with or 2) is not preempted by State law. The Court has stated:
The constitutional home rule provision confers broad police power upon local government relating to the welfare of its citizens (see, People v. De Jesus, 54 NY2d 465, 468). However, it places two firm restrictions on their use: (1) the local government (here, the City of New York) may not exercise its police power by adopting a local law inconsistent with constitutional or general law; and (2) the City may not exercise its police power when the Legislature has restricted such an exercise by preempting the area of regulation. The legislative intent to preempt need not be express. It is enough that the Legislature has impliedly evinced its desire to do so and that desire may be inferred from a declaration of State policy by the Legislature or from the legislative enactment of a comprehensive and detailed regulatory scheme in a [*3]particular area. Similarly, with respect to inconsistency, we have stated that there need not be an express conflict between State and local laws to render a local law invalid. Rather, inconsistency "has been found where local laws prohibit what would have been permissible under State law or impose 'prerequisite "additional restrictions" ' on rights under State law, so as to inhibit the operation of the State's general laws." New York State Club Ass'n, Inc. v. City of New York, 69 NY2d 211, 217 (1987).
"The preemption doctrine embodies 'the untrammeled primacy of the Legislature' to act *** with respect to matters of State concern.'" Albany Area Builders Assn. v Town of Guilderland, 74 NY2d 372, 377 (1989) (quoting, Wambat Realty Corp. v. State of New York, 41 NY2d 490, 497 (1977)). In Albany Area Builders Assn. at 377, the Court further explained, "[w]here the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute."
Judge Ecker, in Woodbury Heights Estates Water Co. v. Village of Woodbury, 37 Misc 3d 180, 185-186 (Sup. Ct. Orange Cty. 2012) has provided the clearest articulation of the doctrines of conflict and field preemption. Judge Ecker explained:
The doctrine of conflict preemption provides that a local law is preempted by a State law when a right or benefit expressly given by State law is curtailed or taken away by the local law. Cohen v. Board of Appeals of Village of Saddle Rock, supra. The doctrine of field preemption is implicated when the State has acted upon a subject, and in so acting has evidenced a desire that its regulations should pre-empt the possibility of varying local regulations. Sunrise Check Cashing and Payroll Services, Inc. v. Town of Hempstead, supra; Chwick v. Mulvey, supra. Pursuant to the doctrine, a local law regulating the same subject matter as a state law is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute. Such local laws, were they permitted to operate in a field preempted by State law, would tend to inhibit the operation of the State's general law and thereby thwart the operation of the State's overriding policy concerns. Field preemption applies under any of three different scenarios. First, an express statement in the State statute explicitly avers that it preempts all local laws on the same subject matter. Second, a declaration of State policy evinces the intent of the Legislature to preempt local laws on the same subject matter. And third, the Legislature's enactment of a comprehensive and detailed regulatory scheme in an area in controversy is deemed to demonstrate an intent to preempt local laws. Evidence of the intent to pre-empt is provided by the complete and detailed nature of the State scheme. Comprehensiveness and detail are important in determining the existence of an intent to pre-empt. When the Legislature has demonstrated its intent to preempt the field, all local ordinances are preempted, regardless of whether they actually conflict with the State. Sunrise Check Cashing and Payroll Services, Inc. v. Town of Hempstead, supra; Chwick v. Mulvey, supra.
DEC regulations permit a licensed hunter to discharge a shotgun over waterways such as Cayuga Lake. ECL § 11-093.4.b(4) expressly permits:
The discharge of a shotgun over water by a person hunting migratory game birds if no dwelling house, farm building or farm structure actually occupied or used, school [*4]building, school playground, or public structure, factory or church, livestock or person is situated in the line of discharge less than five hundred feet from the point of discharge.
Ithaca City Code §219-2(A)(1), provides:
No person shall hunt, pursue or kill with a gun or firearm any wild animals, fowl or birds or engage in hunting within the city.
In short, here, we have a clear case of conflict preemption. The City's ban on hunting under §219-2(A(1), directly conflicts with ECL § 11-093.4.b(4). This court finds that under conflict preemption analysis, the City's complete ban on hunting, prohibits what the State expressly permits, that is, waterfowl hunting along the open waters of the southern tip of Cayuga Lake within the boundaries of the City of Ithaca. Consequently, local ordinance §219-2(A(1) must be declared invalid.
The City's ordinance is not only invalid under conflict preemption, but is also invalid under field preemption. Although there is no express hunting preemption clause contained within the NY State Constitution, under article XIV Conservation, "forest and wildlife conservation are hereby declared to be policies of the state." NY Const. art. XIV, § 3.
NY ECL §11-0303, Management of fish and wildlife resources; general purposes and policies governing manner of exercise of powers, provides: that the DEC is directed to provide "efficient management of the fish and wildlife resources of the state" and "develop and carry out programs and procedures which will in its judgment, [ ] promote natural propagation and maintenance of desirable species in ecological balance." ECL §§11-303.1 and §11-0303.2. The State owns all wildlife including migratory birds and waterfowl, such as ducks. ECL §11-0105 and §11-0103. No person shall kill any wildlife except as permitted by state law. ECL § 11-0107. No person shall interfere with the lawful hunting of wildlife. ECL § 11-0110.
ECL §11-307 permits the DEC to adopt rules and regulations "in relation to migratory game birds as long as they are not less restrictive than federal regulations made under the Migratory Bird Treaty Act of 1918.
Although there is not an express preemption clause, the State legislature's intent is implicitly clear from the expressly stated declared policies as well as the comprehensive nature and scope of the DEC's hunting regulations. The State's intent to preempt a particular area of the law, although not expressly stated, "may be implied from a declaration of State policy by the Legislature." Consolidated Edison Co. of NY, Inc. v Town of Red Hook, 60 NY2d 99, 105 (1983). Consequently, as the State has implicitly preempted the field of hunting through its expressly declared policies, the City's ban on hunting must be declared invalid.
Additionally, this Court agrees with Defendant and DEC that scope, expansiveness, and comprehensive nature of the State's Environmental Conservation Law and regulations reveals a comprehensive and detailed regulatory scheme. A review of the State regulations adopted with respect to hunting migratory game birds are set forth at 6 NYCRR §2.30, is but merely one example of the detailed nature of the State's hunting regulations. The State has completely occupied the field of hunting. Consequently, the comprehensive nature of the regulatory scheme, evincing field preemption in hunting, provides a third rationale under which the city's hunting ban must be declared invalid.
The Court carefully considered the People's submissions which include affidavits establishing bicyclers' and pedestrians' extensive use of trails within 500 feet of the City's [*5]waterways, including the southern end of the lake. The Court takes judicial notice of the fact that the Ithaca High School, Cornell University, and Ithaca College utilize the Cayuga Lake inlet for rowing practice and regattas. Numerous kayakers, canoers and recreational boaters are often present on Cayuga Lake in the early morning, daytime and evening and have been part of Ithaca's recreational life for decades. The Court agrees with the People that it is simply not safe for any individual to discharge a firearm along the Southern tip of Cayuga Lake within the City of Ithaca boundaries, as such would likely threaten the life and safety of the many members of the public who frequently engage in park, trail and water recreation in the area. This Court hopes the DEC will work cooperatively with the City of Ithaca and consider enacting state regulations which will prohibit hunting along the southern tip of Cayuga Lake within the city limits.
Defendant's motion brief also argues that the City's general ban on firearms discharge, ICC §219-1, with which the Defendant is not charged, is also preempted by NY Environmental Conservation Law. However, Joseph Sluzar, counsel for Region 7 of the Department of Environmental Conservation, specifically concludes that the City was granted the power to pass a firearms discharge ban by Chapter 503 of the Laws of 1908, which pre-dates the ECL (April 9, 2019 Letter from Joseph Sluzar, Region 7 Attorney). Under the City's home rule powers, which the DEC acknowledges, the City is allowed to ban the discharge of firearms within its boundaries. This same issue was recently decided in Hunters for Deer, Inc. v. Town of Smithson, 60 Misc 3d 259 [Sup Ct Suffolk Co, 2018]). "[T]he State has not preempted the entire field for regulations related to firearm discharge." Id. at 266.
However, ICC §219-1, which prohibits discharge of a firearm within City limits is not at issue before this court, and a discussion of this local ordinance can only be accorded the weight of dictum. In practice, the DEC has not found Ithaca's firearm discharge ban to inhibit its conservation mandate. Indeed, as the People point out, the DEC's hunting web pages, actually recognize the City's ICC §219-1 firearm discharge prohibition. The DEC states on its "Deer Management Focus Areas" webpage:
Several municipalities (e.g., the City of Ithaca and the Villages of Cayuga Heights and Lansing) prohibit the use of bows and firearms. You MUST obey those restrictions. 
 https://www.dec.ny.gov/outdoor/82382.html
Consequently, while the City may not ban hunting for the reasons stated above, the City's prohibition against the discharge of firearms within city limits appears to be authorized as the State has not occupied the field of firearm discharge (Hunters for Deer, Inc. v. Town of Smithson, supra.) and furthermore, DEC acknowledges the validity of said firearm prohibition.
Accordingly, Defendant's motion to DISMISS the accusatory instrument is GRANTED.
This constitutes the Decision and Judgment of the Court entered upon notice to both parties.
A notice of appeal, if applicable, must be filed within thirty (30) days of the date of this decision.
Dated: September 30, 2019
SCOTT A. MILLER
Ithaca City Court Judge